Harold Baer, J.
This is an action for a declaratory judgment. The basic facts were stipulated and the controversy submitted under CPLR 3222. The parties seek an interpretation and declaration of their respective rights under section 421 of the Real Property Tax Law.
The plaintiffs assembled a plot on Fifth Avenue between 51st and 52nd Streets. They sought and obtained zoning variances and the establishment of a special zoning district which permitted 30 floors of apartments to be built on top of 22 stories of commercial office space and stores. (Olympic Towers.)
Section 421 of the Real Property Tax Law, which applies to New York City only, grants defined exemptions from New York City real property taxes to residential dwelling units "during construction and * * * for a period [of] ten years * * * following * * * completion.” The exemption is granted "provided that taxes shall be paid during any such period at least in the amount of the taxes paid * * * during the tax year preceding the commencement of such construction” (the *769 "mini-tax”). (Real Property Tax Law, § 421, subd 2.) The statute provides that construction shall be deemed commenced upon beginning of excavation.
The plaintiffs have established a condominium plan composed of a single commercial unit and 231 individual residential units. The statute has been implemented by assessing each of these 232 units as separate tax lots commencing with the tax year 1976-1977.
The multiple character of the construction presents an issue never previously determined and both litigants present this and two other basic issues for declaration.
1. May the minimum tax mandated by section 421 of the Real Property Tax Law (the mini-tax) be satisfied by crediting the tax payments made during the exemption period on the commercial portion of a multipurpose development?
2. How should the mini-tax be computed? The Housing and Development Administration (HDA) regulations provide that the mini-tax should be the assessed valuation for the year prior to the commencement of construction of the new development multiplied by each year’s then current tax rate. The plaintiffs claim the mini-tax should be the amount of taxes paid in that prior year.
3. Which is the first year of exemption requiring payment of at least the mini-tax? The construction in this case began in August, 1972. The plaintiffs paid the mini-tax for that year (1972-1973) and thereafter sought and obtained, by writ of certiorari, a reduction of assessment so large as to reduce the "normal” tax for that year to an amount less than the mini-tax. They thereafter applied for and accepted a refund. They now claim in opposition to the city’s counterclaim that the first year of exemption is 1973-1974.
These are all questions of law and upon resolution, guidelines will be created so that the parties will be able to calculate and determine their monetary responsibilities.
1. The first issue presented by the plaintiffs is the claim that the taxes paid by the commercial portion of the new building satisfy the mini-tax required to be paid during the period of exemption. In the instant case for the years 1972-1973 through 1975-1976 this issue has not been presented. The condominium plan was not yet in effect and the commercial and residential portions were not separately owned. The issue thus first arises in the tax year 1976-1977, which is the year *770 after the statute was amended to take explicit recognition of multipurpose developments.
The city and the plaintiffs have both assumed that implementation of the statute is to be effected by separately assessing the commercial and residential portions of this single premises. Plaintiffs claim that the residential portion is required to pay no taxes so long as the taxes to be paid by the commercial portion exceed the mini-tax. It is this very procedure of separate assessments and separate tax determination without first fixing the amount of exemption which causes the difficulty in determining the treatment of the exemption and the mini-tax. There is no justification in the statute, or in the HDA regulations, for use of that procedure. Further, implementation of the amendment of 1975 (L 1975, ch 857) which does make provision for a multipurpose development requires unified treatment for assessment and exemption determination, even though, as hereinafter explained, the resultant exemption is then apportioned.
Thus, for the exemption period following July 1, 1975 (the effective date of the 1975 amendment) the entire premises should be assessed as a single unit, the normal tax thus established, the exemption "diminished” by the percentage of commercial floor area in excess of 12% of the total floor area, as provided in the statute, and the amount of the net exemption thus determined.
Where, as in this case after 1975, there are separate owners the exemption is then similarly apportioned between the commercial and residential portions of the premises. The respective amounts of exemption are then to be deducted from the taxes normally computed[1] on the separate portions of the premises.
The 1975 amendment, in effect, modified (by allowing commercial space up to 12% of the total space to be included for exemption) the original statute which provided that exemp *771 tion was intended only to encourage and to benefit residential construction. Both parties here acknowledge that before the amendment the exemption was only for the residential portion of the development. But the procedure used unnecessarily complicates the proper determination of the amount of exemption and its apportionment between commercial and residential. It should be recognized that the statute is written (as is the amendment) in anticipation of a single ownership. Here, to reduce the exemption, the city, the plaintiffs acquiescing, separately assessed the separate ownership interests and anticipated exemption only against the residential portion by reducing the assessment. More precise and equitable is the device used in the 1975 amendment and the procedure described above for implementation.
The statute has a specific and limited purpose: to encourage residential construction. The Legislature in 1975 increased the benefits for sponsors by granting exemption to a portion of the commercial space in a multipurpose dwelling. However, nowhere is there any evidence of an intent that residential owners should get a "free ride” by permitting the taxes paid by the commercial portion to satisfy their obligation to pay at least some taxes. Accordingly, the procedure now to be followed must be to require the residential owners (in the aggregate) to pay the higher of either the normal tax as reduced by the exemption or the mini-tax.[2]
2. It should be noted that section 421 of the Real Property Tax Law as here applicable, has been thrice amended. (L 1971, ch 1207, as amd by L 1973, ch 408, as amd by L 1975, ch 857, *772 as amd by L 1976, ch 703.) Only one of these amendments, however, applies in the instant case to this issue.
The 1971 statute granted exemption "provided construction be commenced after July first, nineteen hundred seventy-one and before January first, nineteen hundred seventy-three and completed no later than December thirty-first, nineteen hundred seventy-four”. The 1975 and 1976 statutes apply to construction "commenced after January first, nineteen hundred seventy-five”. (Emphasis added.) However, the 1973 amendment is applicable to construction "commenced after July first, nineteen hundred seventy-one and before January first, nineteen hundred seventy-five”. (Emphasis added.) Except as to the inclusion of a portion of the commercial space in the exemption in the 1975 statute, the 1975 and 1976 statutes do not directly apply to the instant situation. The 1971 and 1973 statutes do apply. It should be noted too, that the successive statutes were not merely amendments but reenactments of the total statute with the dates changed and other provisions added or deleted. With the exception noted, each of these statutes therefore stands alone and is separately applicable to construction commenced within the respective periods specified.
In 1976, the language that describes the mini-tax in the previous years’ statutes was changed to accord with the position urged by the city and the previous reference to "amount of the taxes paid” is deleted. While the issue therefore has been statutorily resolved for future construction, it is left for judicial resolution in the instant case.
The city urges that the very amendment in 1976 which provided for computation of the mini-tax by multiplication of the current tax rate times the preconstruction assessed valuation (L 1976, ch 703) proves that that was the intent of the Legislature all along. The case is otherwise. If the earlier statute meant what the city now urges, there would have been no need for an amendment. The city also urges that the HD A rules (HDA regulations, Dec. 1, 1971, Regulations Governing Partial Tax Exemption For New Multiple Dwellings) contain the same interpretation. However, an administrative agency may not adopt rules inconsistent with the enabling statute. Beyond that, the plain unambiguous language of the statute speaks of the "amount of the taxes paid” with no subjunctive provisos. It is true, as the city claims, that the legislative intent was that the city would not suffer from a reduction of taxes by reason of the exemption. Even if the plaintiffs’ *773 interpretation were adopted, the city would in fact not "lose” taxes as compared to the "amount paid” prior to construction.[3]
3. The plaintiffs claim that the first year of exemption is 1973-1974. This claim is necessitated by the fact that they did not pay the mini-tax for 1972-1973 but the lesser tax resulting from their successful prosecution of a writ of certiorari to reduce the property’s assessed valuation. While it is true that the statute refers to the "tax status date” that reference is only to the completion of construction, not its commencement. The statute very plainly stipulates that the exemption is granted during the period of construction and for 10 years after the taxable status date immediately following completion. At least the mini-tax is to be paid for the entire period of construction. There is no provision for a taxpayer to pick and choose the years to which the exemption shall apply.
The statute plainly provides for exemption from commencement of construction and for a period of 10 years after completion, no more, no less, and not in part. The plaintiffs sought and obtained a lower tax than the mini-tax they would have otherwise paid during a selected (by them) portion of the exemption. Having selected and paid that lower tax for a period of the exemption they have not complied with a condition precedent to the grant of exemption. They must make up the difference to retain the grant of exemption.
In summary, then, the issues presented are resolved as follows:
1. Is the mini-tax satisñed by the payments made by the commercial portion of the premises? No. The amounts of the exemption for each of the commercial (12%) and residential (in the aggregate) portions are to be determined by singly assessing the total development, calculating the normal tax, determining and allocating the exemption between the commercial and residential portions based on the floor area of each[4] as limited on the commercial portion by the 1975 *774 amendment to section 421 of the Real Property Tax Law. These separate exemptions are then deducted from the normal taxes due on each portion. The net tax is then paid by the commercial portion and the higher of the net tax or the mini-tax paid by the residential.[5]
2. How should the mini-tax be computed? For these premises, qualifying under the original statute, the mini-tax is the amount of tax paid on the premises in the year before construction commenced, in this case the 1971-1972 tax year.[6]
3. Which is the ñrst year of exemption? The first year of exemption is 1972-1973. For each year including that year, the larger of the mini-tax or the normal tax, as reduced by the exemption, must be paid. Since the payment of a lesser amount for one year may have been the result of mutual confusion by both parties, rather than evidence of an intention to abandon the exemption, the plaintiffs may retain the exemption by payment of the amount by which they are deficient.

. Section 339-y of the Real Property Law requires that "[e]ach [condominium] unit and its common interest” be separately assessed and taxed. The two statutes are harmonized by subtracting from each of these "normal” tax bills a proportionate share of the net amount of the exemption determined as described in the body of this decision. Assessment of any condominium under section 339-y requires its assessment as a single parcel for purposes of comparison just as single assessment is required under section 421 of the Real Property Tax Law for computation of the amount of exemption.

. This is not the only correction that is required. Although not formally, but implicitly, presented as an issue for declaration is the determination of the proper tax lots to be included. The application for exemption included lots numbers 1, 63, 64, 69 and 71; the certificate of eligibility was for lots 1 and 64. For some reason not disclosed to the court, lots 1, 63 and 64 were merged in 1973-1974 and that single merged parcel treated as the qualifying premises. In 1974-1975 they were separated and each of the three separately assessed and taxed with only lot 1 treated as the qualifying premises. In 1975-1976 lots 1 and 64 were merged and treated as the qualifying premises. For 1976-1977 the commercial unit and each of the residential units have been designated as separate (232) tax lots. If the original certificate was correct, in addition to the correction of procedures described in the main body of this decision, the assessment and taxation methods used in 1973-1974 and 1974-1975 must be corrected and the assessment, normal tax and mini-tax computed on the combination of those two lots. If the certificate is incorrect it should be amended. In either case a uniform treatment should be effected from commencement of construction and throughout the exemption period, and the necessary corrections and amendments should be made consistent with this decision.

. The city argues that other exemptions, such as for rehabilitation, use the old assessment multiplied by the current rate to fix a mini-tax. A comparison of the differences in language in the two pieces of legislation reinforces interpretation herein. (Cf. Administrative Code of City of New York, § J51-2.5, subd c.)

. The court notes, though necessarily not an issue here since the residential owners are not parties, that the basis for allocation of exemptions and the basis for separately assessing the commercial and residential units are not the same. Section 421 requires use of the floor area for determining exemption, while separate assessments are to be made under section 339-y of the Real Property Law for condominium units based on each "unit and its common interest”.

. The court recognizes the problem posed by the comparison of exemption reduced normal tax on a portion of the premises with the mini-tax on the entire premises. However, while the Legislature provided for apportionment of exemption it did not provide for apportionment of the mini-tax. It is an issue which may well warrant attention.

. The payment of the mini-tax should not be effectuated by currently assessing the residential portion, the so-called "mini assessment” (i.e., the assessed valuation in the year prior to construction). The statute makes no such provision; the device improperly portrays the valuation of real estate in the city and unnecessarily obfuscates the straightforward operation of the statute. Implementation of the statute should be effected in tax collection procedures not by manipulating assessed valuations.