■ TELEON REALTY CORP. et al., Appellants-Respondents, v CITY OF NEW YORK et al., Respondents-Appellants.—Judgment, Supreme Court, New York County, entered June 13, 1977 which in a declaratory judgment action submitted pursuant to CPLR 3222 determined certain issues involving the interpretation of section 421 of the Real Property Tax Law as applied to Olympic Tower, and fixed plaintiffs' tax liabilities accordingly, modified, on the law, without costs, to the extent of declaring that the residential portion of the property is required to pay as a minimum tax a proportionate share (determined as hereinafter discussed) of the tax in dollars payable in the base year with respect to the entire property, and striking those parts of the resettled judgment that applied the 1975 amendment to section 421 in fixing tax liabilities for the tax years commencing 1975-1976, and otherwise affirmed. Section 421 of the Real Property Tax Law effective July 6, 1971 (L 1971, ch 1207, § 1) authorized exemption from taxation for local purposes for a limited period of years of new multiple dwellings to be built in New York City. The issues presented in this action for declaratory and related relief involve the interpretation of that section as applied to a combined commercial and residential building. Certain basic facts not in dispute were stipulated in the trial court and the controversy was submitted under CPLR 3222. The property at issue is the Olympic Tower, located on the east side of Fifth Avenue, between 51st and 52nd Streets in Manhattan, a site previously long occupied by the Best & Company Department Store. Construction began on August 21, 1972 after plaintiffs had sought and obtained zoning variances and the establishment of a special zoning district permitting the construction of a combined commercial and residential building. On December 13, 1972, plaintiffs filed with the Housing and Development Administration of the City of New York (HDA) a preliminary application for certification of eligibility for tax exemption under section 421 of the Real Property Tax Law. A preliminary certificate of eligibility for tax exemption was granted on January 17, 1973 "except as to those portions of the new building, if any, which are non-residential or hotel parts of a mixed building." Now constructed, the Olympic Tower is a 52-story edifice, including 31 floors of condominium dwellings above 21 stories of commercial office space, plus several ground-floor-level stores and a basement service area. Section 421 of the Real Property Tax Law as originally enacted, effective July 6, 1971, provided in pertinent part as follows: "1. New multiple dwellings within a city having a population of one million or more * * * shall be exempt from taxation for local purposes, other than assessments for local improvements, during construction and so long as used for dwelling purposes for a period not to exceed ten years in the aggregate after the taxable status date immediately following the completion thereof, consisting of two years of full exemption followed by two years of exemption from eighty per cent of such taxation, followed by two years of exemption from sixty per cent of such taxation, followed by two years of exemption from forty per cent of such taxation, followed by two years of exemption from twenty per cent of such taxation; provided that taxes shall be paid during any such period at least in the amount of the taxes paid on such land and any improvements thereon during the tax year preceding the commencement of such construction and that exemption from taxes shall not be availed of

concurrently under any other law. * * * For purposes of this section construction shall be deemed 'commenced' when excavation has begun in good faith on the basis of approved construction plans." In a thoughtful, carefully detailed opinion (88 Misc 2d 767), the trial court resolved the three central issues in the litigation as follows: (1) the minimum tax required by section 421 of the Real Property Tax Law could not be satisfied or discharged by tax payments made by the commercial portion of the premises; (2) the minimum tax to be paid was the dollar amount of tax paid on the premises in the year before construction began, in this case the 1971-1972 tax year, and not, as contended by the defendants, a tax to be calculated by applying to that year's assessed valuation each year's current tax rate; and (3) the first year of exemption was 1972-1973. We are in agreement with the trial court that 1972-1973 is the first year of exemption and that the minimum tax is the dollar amount of tax paid on the relevant property in the base year, 1971-1972. As to the latter issue, we appreciate that the question is not free from doubt and that there is some merit to the defendants' argument that this construction results in an unintended windfall. Notwithstanding the fact that the defendants' view was adopted in a contemporaneous administrative requlation, clearly entitled to weight, the statutory language seems to us clear and unambiguous and to require the interpretation adopted by the trial court. As to the remaining issue, the relationship between tax payments by the commercial portion of the property to the obligation to pay the minimum tax, a closer question is presented. The issue is complicated by the fact that section 421 of the Real Property Tax Law, as originally enacted, did not contemplate a combined commercial and residential development of the kind involved and the language of the section is accordingly imprecise and unhelpful. We must attempt an application of the statute consistent with its general scheme and intent. The Legislature first confronted directly the problem of a combined structure in 1975, when the statute was amended to allow commercial space up to 12% of the total space to be included for exemption (and also provided that the minimum tax should be calculated by applying to the base year's assessed valuation each year's current tax rate). However, the 1975 amendment is by its terms not applicable to properties where construction was begun before January, 1975 (L 1975, ch 857, § 3), contrary to an erroneous conclusion by the trial court that may have influenced his determination of this issue. We agree that the statute cannot reasonably be interpreted to permit taxes paid on the commercial portion of the combined structure to discharge the obligation to pay the minimum tax. However it does not follow from this that, in addition to the payment by the commercial portion of a full assessment tax on part of the property, the residential portion should be required to pay as minimum tax the entire tax paid on the whole property for the base year. The fairer approach in our view, and one which seems to us consistent with the basic purpose of the section, is to apportion rights and obligations, including assessments, between the commercial portion and the residential portion, with each portion to be taxed in accordance with the rules applicable to commercial or residential properties respectively. Thus we would treat the case as if there were two buildings on the property, a commercial building and a residential building, allocate an appropriate proportion of the dollar tax paid on the whole property for the base year to each of these "buildings," and determine that the minimum tax to be paid by the residential portion of the property should be its appropriate proportion of the dollar tax paid on the whole property for the base year. There are various rational methods of determining that apportion-

ment. Plaintiffs' "Offering Plan" filed with the Attorney-General of the State of New York, and relied upon by the trial court in the resettled judgment, seems to us to provide an appropriate basis for that apportionment. It sets forth in detail the ownership of the land and the common elements of the property and the division of floor area between the residential and commercial section. Nor do we see any persuasive reason why that plan is not applicable to the fixing of taxes for the period before its effective date. It was only on the representation that the property was going to be used for dwelling purposes pursuant to the statute that it became entitled to any benefits under the statute, and the representation from the beginning was that the dwelling use would be as set forth in the condominium plan. Apportionment on this basis is in principle what the tax authorities have chosen; it is substantially consistent with the scheme adopted by the later amendment of 1975; and it appears fair enough to us. Accordingly, the minimum tax applicable to the residential property should be an appropriate portion of the total dollar tax applicable to the entire property for the base year, determined as follows: (a) the portion of the dollar amount of the base year improvements tax applicable to the residential portion should be in proportion to the floor areas involved, i.e., 53.332582% as determined by the trial court; (b) the portion of the dollar amount of the land value tax applicable to the residential portion should be in proportion to the areas as allocated, i.e., 4.55527% as determined by the trial court; and (c) the total dollar minimum tax for the residential portion should be the sum of (a) and (b). We would apply the same proportions in the years when the property was still under construction for the purpose of determining (i) the portion of the assessed valuation of the entire property for those years, allocated to the ultimate commercial use, and as to which a normal commercial tax would apply without exemptions or minimum; and (ii) the portion of the assessed valuation of the entire property for those years allocated to the ultimate residential use, and as to which the tax would be the minimum tax for the residential portion as determined above. As already noted, the trial court erred in applying to this property for the years following its effective date the 1975 amendment that granted a limited exemption to the commercial portion of the property. It was on the basis of this misunderstanding that the trial court advanced the thesis that the entire premises should first be assessed as a single unit to establish the normal tax. However, as applied to properties where construction was begun before January, 1975 and as to which the 1975 amendment is inapplicable, it makes no practical difference whether the trial court's approach be followed, or the commercial and residential portions simply be separately assessed. We have considered the other issues raised on this appeal and are in agreement with the conclusions reached by the trial court. Concur—Silverman, Fein, Yesawich and Sandler, JJ.

Kupferman, J. P., dissents in part in a memorandum as follows: I dissent with respect to the court's determination that the minimum tax is a function of the tax paid on the property in the base year. My reading of the statute and consideration thereof with the contemporaneous administrative regulation leads to the conclusion that the reduced percentages should be applied to the current tax rate in each year. I believe the statute in and of itself leads to that conclusion with the use of the words "at least". In any event, the administrative regulation would certainly have a reasonable basis and not be arbitrary or capricious. (Matter of Sigety v Ingraham, 29 NY2d 110, 114.) The fact that the statute was later amended in 1976 to include

language specifically providing for the calculation of a "mini-tax" by the use of the current tax rate, does not indicate a change but rather a confirmation of the administrative interpretation. As the trial court mentioned (88 Misc 2d 767, 772), the successor statutes were not merely amendments but reenactments with the dates changed and other provisions added or deleted. In that case, it would have been normal for cosmetic changes to be made. Settle order. [88 Misc 2d 767.]