**UNION OIL COMPANY OF CALIFORNIA, for itself and as agent and common parent for and on behalf of Collier Carbon and Chemical Corp., Union Alaska Pipeline Co., and Woodland Co., Appellants,**

v.

**STATE of Alaska, DEPARTMENT OF REVENUE, Appellee.**

No. 7389.

Supreme Court of Alaska.

Feb. 10, 1984.

John C. Siemers, Burr, Pease & Kurtz, Anchorage, for appellants.

Mark E. Ashburn and David T. LeBlond, Asst. Attys. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and MOORE, JJ.

## OPINION

BURKE, Chief Justice.

This case presents one basic issue for decision—how should a tax exemption granted to a Union Oil Company subsidiary pursuant to the Alaska Industrial Incentive Act, AS 43.25.010—43.25.170, be applied against the state income tax liability of the Union consolidated group? Under the accounting method used by Union Oil, the exemption completely offset the tax liability of the entire consolidated group from 1973 to 1977. The Department of Revenue

disallowed this approach and recalculated the exemption to reduce only the liability of the subsidiary to which it was granted. The remainder of the consolidated group was assessed a total of $3,544,106 plus interest for 1973 to 1977. The superior court affirmed this assessment. For the reasons set forth below, that decision is affirmed.

## I. FACTS AND PROCEEDINGS

The audit in this case covers the tax years 1973 to 1977. For those years, Union Oil Company of California [Union] was the common parent corporation of a unitary group of corporations doing business worldwide. Four of the corporations—Union Alaska Pipeline Company, Woodland Development Corporation, Collier Carbon & Chemical Corporation [Collier], as well as Union itself—had business operations in Alaska during the audit period. These corporations together filed a consolidated Alaska Corporation Income Tax Return for each year from 1973 to 1977. Since the Alaska group was unitary, formulary apportionment was the accounting method used to compute Alaska taxable income pursuant to AS 43.20.065. Under formulary apportionment, the property, payroll and sales of Union and its subsidiaries worldwide. The resulting ratio is then multiplied by the worldwide income of the entire unitary group to determine the income specifically attributable to Alaskan operations.

On March 25, 1969, the State of Alaska issued Collier a Certificate of Industrial Tax Exemption pursuant to AS 43.25.[1] The Certificate exempted Collier from state and local taxes, including income taxes, in connection with a newly constructed facility near Kenai, Alaska for the manufacture of ammonia and urea. Since Collier was a member of a consolidated group, the Certif-

icate included a provision that recognized that the consolidation would not operate to deny Collier the exemption.[2]

Union interpreted the Certificate from the outset as allowing it to use separate accounting to compute the Kenai plant's income. Under the separate accounting method, the expenses of the Kenai plant were subtracted from the plant's gross income. The result was the hypothetical taxable income of the plant. The amount of tax which would have been due on such income absent the exemption was calculated by Union and then credited against the total tax liability of the consolidated group. The taxable income of the consolidated group, however, was determined under the entirely different accounting method of formulary apportionment.

Using separate accounting, Union's consolidated tax return reported net operating losses for the Kenai plant for each of the first four years of operation [1969 through 1972]. Since no income was reported, Union did not claim any tax exemption on its consolidated returns for these years. A Department of Revenue audit of the 1970—1972 tax years of the consolidated return acknowledged the zero tax exemption and made no further computations on this subject.

For each of the years in question, 1973—1977, Union reported net income for the exempt business under the separate accounting method. Union computed the tax liability and resulting exemption on this net income and applied it directly against the tax liability of the Union consolidated group computed by formulary apportionment. For each year from 1973 to 1976, this exemption as computed by separate accounting exceeded the tax liability on the income of the entire Alaska consolidated group as computed by formulary apportionment.[3] Beginning in 1977, Union used this

1. Two other corporations also received the exemption with Collier—Japan Gas Chemical Co. and Alap Corp.—but their tax liability is not in issue in this case.

2. However, the Certificate grants the exemption to "the applicant" and defines the applicant as Collier, not the consolidated group.

3. Because the apportioned income to a state depends on this worldwide apportionable income, it is not uncommon in a particular state

excess "credit" of the exemptions from prior years to offset its group liability for that year. As a result of these procedures, Union declared no tax liability for the entire Alaska consolidated group for each of the years 1973 through 1977.

The Audit Division of the Alaska Department of Revenue adjusted the taxes and after informal conference determined that the Union consolidated group owed a total of $3,697,910 in taxes for the years 1973 to 1977. This assessment resulted primarily from an adjustment in the application of the tax exemption of the Kenai plant to the consolidated tax liability. The Audit Division allowed Union to use separate accounting in computing the amount of the exemption. But in applying this exemption to the consolidated tax liability, the Division allowed only so much of the exemption as would reduce the actual tax liability of Collier. The actual tax liability of Collier was determined by formulary apportionment. The amount of the exemption that remained could not be used to reduce the consolidated group tax liability either in any present or future tax year.

Union appealed the informal conference decision before a Department Hearing Officer. The Hearing Officer affirmed the Audit Division's procedures. After mathematical corrections of the Audit Division decision,[4] the Hearing Officer determined that the Union consolidated group owed $3,544,-106 plus interest for 1973 to 1977.[5] The decision was adopted by the Department of Revenue. Union appealed this determination to the superior court. That court, Judge Johnstone presiding, affirmed the Department's decision. This appeal followed.

■ Union's position is that the separate accounting method it used to calculate and apply the exemption is the only permissible method under the Exemption Certificate. Union also argues that the Department of Revenue in effect issued a ruling on the propriety of this accounting method when Commissioner Gallagher wrote Union in 1975 that the company was in full compliance with the Exemption Certificate. Finally, Union argues that under this required accounting method, it is entitled to carry-over tax exemptions to the extent not fully used in one year to offset liability in succeeding years. We find all these contentions without merit.[6]

## II. THE EXEMPTION CERTIFICATE

Union argues that the Certificate of Industrial Exemption granted to Collier specifically requires the hypothetical tax liability of the exempt plant to be determined by

for apportioned income to be greater or less than the income in the state if determined by the separate accounting method. In the instant case, the operations of the Kenai plant were more profitable than the average Union activity, thus accounting for the disparity.

4. The Hearing Officer also readjusted the apportionment factors, a change not in issue in this case.

5. The decision did note in discussion that only the income of the exempt business should be used in computing the exemption, not the income of all Alaska operations of Collier as the audit division had done. However, in the final order, no mention of any recomputation is made. Moreover, it appears that Collier's only meaningful activity in Alaska was the operation of the Kenai plant, making recomputation unnecessary. The only evidence of other activity by Collier in Alaska from 1973 to 1977 is the ownership and operation of a barge. This barge was only in operation in 1973 and 1974. However, no tax exemption was available to Collier in either of those years, because net loss carryovers from prior years reduced its 1973 and 1974 income to zero. Therefore, any inclusion of income from its barge activities in Collier's exempted income for those years would be irrelevant. For the other years, it appears the exempt Kenai plant was the only business activity of Collier in Alaska. Thus, the Alaska taxable income of Collier would equal the Alaska taxable income of the exempt Kenai plant. If there is any difference in these two figures, the Department and Audit Division's use of all Alaska Collier activities is in favor of Union. If Collier had business activities in Alaska other than the exempt business, then the Department's figures would in effect grant Union an exemption on some non-exempt Collier income.

6. In its points on appeal, Union raised numerous other contentions. However, these points were not briefed so we will consider them abandoned. *Wetzler v. Wetzler*, 570 P.2d 741, 742 n. 2 (Alaska 1977).

separate accounting and that the resulting exemption be applied to directly offset the consolidated tax liability of Union. Union points to section I of the Certificate as mandating this result. Section I states:

All income tax returns and other' tax returns required to be filed with the Department of Revenue or other departments shall be complied with as though no exemption existed and copies of all returns shall be furnished to the Commissioner of Economic Development on their due dates, including any extension of time granted by the department whose tax returns are involved. The applicants shall indicate on or attached to the returns what portion of the receipts, income and expenses are derived from the exempt property as defined in paragraph A and may show on the returns the amount of credits claimed.

The fact that an applicant may be included as a member of a consolidated group which files a consolidated income tax return with the State of Alaska shall not operate to ·deny the exemption from Alaska income taxes granted herein to any such applicant. However, if consolidated returns are filed the amount of the tax credit granted shall be only that amount that would be allowed if separate returns had been filed. For example, the exempted business may have a net income for tax purposes (computed as if no exemption existed) of $100,000 and a tax of $8,370. Whereas, a consolidated return showing a $1,000,000 in taxable income would have a tax of, say, $93,000. (Part of its tax being in a higher tax rate classification.) The amount of tax credit claimed on the consolidated return would be $8,370 and not the amount of tax arising on $100,000 income if it were computed as coming off the top at the higher tax rate. (Note: The income and tax figures used in this paragraph are

hypothetical. Actual figures would have to be used in each instance.)

■ Under AS 43.25.040, the Exemption Certificate is "considered a contract between the grantee and the state." In interpreting this contract, 71 Am.Jur.2d *State and Local Taxation* § 331 at 642 (1973) provides guidance:

The principle that tax exemption laws are strictly construed against the exemption is especially applicable to contracts granting exemption from taxation. Such contracts are in derogation of the sovereign authority and of common right, and therefore are not to be extended beyond the exact and express requirements of the language used, construed strictissimi juris.

(Footnotes omitted).

If the state's interpretation of the contract is reasonable, that interpretation will control. Only if the taxpayer establishes that the contract clearly and unequivocally extends the exemption beyond the state's interpretation should the taxpayer prevail.[7] This presumption in favor of the state's interpretation is based on the disruption in the equality of taxation that an exemption creates.

■ In order to determine whether the state's interpretation of the Exemption Certificate is reasonable, it is necessary to ascertain whether this interpretation is in harmony with the purposes of the Alaska Industrial Incentive Act since it was this legislation which forms the basis for the Exemption Certificate.

The Alaska Industrial Incentive Act does not expressly address the methodology to be used for applying the exemption against the tax liability of an applicant. For most businesses, formulary apportionment is not used in computing income tax. Apportionment is used only by companies engaged in multistate activities. When an applicant is

---

**7.** *See Greater Anchorage Area Borough v. Sisters of Charity of the House of Providence,* 553 P.2d 467, 469 (Alaska 1976) ("A taxpayer claiming a tax exemption has the burden of showing that the property is eligible for the exemption."). *See also United States v. Stewart,* 311 U.S. 60,

71, 61 S.Ct. 102, 109, 85 L.Ed. 40, 49 (1940) ("respondent [taxpayer] has succeeded only in casting some doubt on the proper construction of the [exemption] statute. Yet those who seek an exemption from a tax must rest it on more than a doubt or ambiguity").

a member of a consolidated group—such as Collier with Union Oil—and formulary apportionment is used on the consolidated return, complications arise which the Act simply does not address. An application of the statute to this situation must be adopted which is consistent with the statute's general scheme and intent.[8]

■ The statute authorizes only an exemption from income taxes which would otherwise be due on industrial development income. AS 43.25.010(a) states that "[a]n exempted business is exempt from income tax upon its industrial development income derived during the 10 years following the date of beginning its operations as determined by the [D]epartment [of Commerce and Economic Development]." An exemption is defined as "immunity from certain legal obligations, as ... the payment of taxes." Black's Law Dictionary 513 (5th ed. 1979). The problem with Union's approach is inherent in the two accounting methods which it utilizes. Use of separate accounting to calculate industrial development income and formulary apportionment to calculate income from all its Alaska operations allows Union to shelter the income from its other Alaska operations through the use of the tax credits generated from the income derived from the exempt plant. While the exempt plant should be tax free, it goes well beyond the purposes of the Industrial Incentive Act to allow the exempt plant to provide tax immunity to Union's other operations.[9] By employing a different accounting method, Union has exceeded the tax immunity created by the Alaska Industrial Incentive Act. The exemption should be limited to solely that which the act specifically exempts—the income tax liability of the exempt plant's income. Since this tax liability would be determined by formulary apportionment, the exemption should likewise be limited to the liability as determined by this method. This is precisely the result under the state's interpretation.

■ Turning to the language of the Exemption Certificate, we find ample support for the state's interpretation. The second sentence in the second paragraph of section I states: "[h]owever, if consolidated returns are filed the amount of the tax credit granted shall be only that amount that would be allowed if separate returns had been filed." The state argues that this phrase limits the tax exemption to the tax liability of the exempt plant computed by formulary apportionment. If Collier, the applicant, had filed a separate return, its tax liability would have been computed by formulary apportionment, since it is a unitary business with activities both inside and outside of Alaska.[10] The amount of exemption would therefore be limited to the separate tax liability of Collier as computed by formulary apportionment, according to the language of the second sentence.

More importantly, the Certificate grants the exemption to "the applicant," which is specifically designated in the contract as Collier—not the consolidated group. The state's interpretation of the contract limits the exemption to Collier. Under Union's approach, the entire consolidated group pays no state income tax, hence extending the benefit beyond the contract provisions.

8. *See Teleon Realty Corp. v. City of New York,* 68 A.D.2d 858, 414 N.Y.S.2d 566, 568 (1979), *aff'd,* 50 N.Y.2d 824, 430 N.Y.S.2d 50, 407 N.E.2d 1346 (1980).

9. Union points out that the statute defines industrial development income as "net income derived ... from ... property devoted to industrial development." AS 43.25.150(a). It contends that "net income" is a term used solely in separate accounting, and that "derived from" precludes the use of formulary apportionment since that accounting methodology looks to worldwide factors. These terms, however, are relevant only to the computation of the exempt plant's income, a point not in issue in this case. They do not address the application of the hypothetical tax on that income to the consolidated return.

10. Union contends the phrase "if separate returns had been filed" refers to a separate return by the exempt plant, not by Collier. This interpretation is supported by the example which concludes Section I. However, since the tax liability of Collier is essentially equivalent to that of the exempt plant, the distinction is of little relevance.

Union points to language in the Certificate to support its interpretation. Section I's requirement that the applicant report "income and expenses" is stressed. Union contends that had formulary apportionment been required, there would have been a requirement in the Certificate for a separate statement of property, payroll, and sales of only the exempted business. Since such information need not be reported, the Certificate contemplates the exclusive use of separate accounting in applying the exemption.

█ Union also points to the Exemption Certificate referring to the amount of "credit" to which the consolidated group is entitled. Union argues this means that the amount of exemption computed by separate accounting should be directly applied to the consolidated tax return. A credit, in taxation, refers to an amount which may be subtracted from the computed tax itself (in contrast to a deduction which is generally subtracted from gross income). *See* Black's Law Dictionary 331 (5th ed. 1979). This language lends some support to a direct application of the exempt plant's tax liability against the consolidated return.[11]

But while Union has shown that the contract contains some language in support of its position, it has not established that the state's interpretation is unreasonable. Indeed, although the Certificate is not free of all ambiguity, the state's interpretation appears considerably more reasonable than Union's when both the language of the Certificate and the enabling legislation are considered. For these reasons, we uphold the state's interpretation of the Certificate to limit the exemption to the tax liability of Collier as computed by formulary apportionment.[12]

## III. THE COMMISSIONER'S LETTER

█ In a letter dated February 6, 1975, the Commissioner of Revenue notified Collier that section I of the Certificate required the taxpayer to include with the consolidated return a separate, attached statement showing "receipts, income and expenses ... derived from the exempt property as defined in paragraph A." Because this statement had not been attached and filed with the consolidated tax returns, the Commissioner gave official notice that non-compliance would result in revocation of the entire Certificate in 30 days if the reporting requirements were not met.[13]

By letter dated March 4, 1975, Union responded with the requested statement showing income and expenses for the exempt business for each of the years 1969 through 1973. The statement showed, by separate accounting, accumulated losses for 1969—1972 of $30,630,874. The letter specifically requested the Commissioner to issue a letter that acknowledged Collier to be in full compliance with the reporting provisions of the Certificate. The Commissioner replied by letter of March 14, 1975 stating that:

> As you have requested, this letter acknowledges the fact that Collier Carbon is now in full compliance with the reporting provisions of the Certificate of Indus-

11. Union also contends that two documents, both written during the negotiation phase for the Exemption Certificate, demonstrate that separate accounting must be used in applying the exemption. The court can consider such extrinsic evidence in interpreting the contract. *Wright v. Vickaryous,* 598 P.2d 490, 497 n. 22 (Alaska 1979). Here, however, we find minimal value in the two documents Union advances. Both are written by Union personnel. Neither was addressed to the state's contract negotiators. Moreover, both recognized how additional accounting procedures would be required after computing the exemption by separate accounting for applying the exemption to the consolidated tax liability. This two-step approach corresponds to the state's position far more than it does to Union's current approach.

12. Before this court, the state argues that Union alternatively could have used formulary apportionment to compute the exemption from the outset. However, neither Union nor the Department did this in fact, and hence whether such an alternative method may have been utilized is not before us.

13. Under section K of the Certificate, the exemption could be revoked by the state for reasons including "violation of or failure ... to comply with this exemption Certificate." *See also* AS 43.25.060(b)(1).

trial Tax Exemption dated March 25, 1969 as far as the Alaska Department of Revenue is concerned.

Union contends this letter constituted a ruling that separate accounting was the sole methodology to be used both in computing and in applying the tax.[14]

26 C.F.R. § 601.201(a)(2), made applicable to the Department of Revenue under AS 43.20.300(b), defines the term "ruling":

A ruling is a written statement issued to a taxpayer or his authorized representative ... which interprets and applies the tax laws to a specific set of facts.

Whether the letter constituted a ruling on the proper method of computing the exemption need not be decided, since both Union and the state now concede the taxpayer's ability to use separate accounting at this stage. But the letter can not be construed to address the issue of the application of the exemption to the consolidated tax liability of the Union group. The letter itself refers only to Collier's compliance with the reporting provisions of the Certificate.[15] Since there has been no applicable ruling, there is no merit to Union's underlying claim that the state has retroactively revoked a prior ruling.[16]

## IV. CARRY-OVERS

■ Under Union's approach, the amount of tax exemption computed by separate accounting exceeded the tax liability of the entire consolidated group for 1975 and 1976. In its 1977 return, Union claimed it was entitled to carry over the unused portion to apply against its tax liability for that year.

Under the Hearing Officer's decision, an even larger amount of the tax exemption computed by separate accounting is unused, since the amount of the exemption available for each year is limited to Collier's tax liability as determined by formulary apportionment.

To allow carry-overs of this excess would run counter to treating the exemption as what the term means—an exemption from actual tax liability. Absent the exemption, taxes on the Kenai plant's income would not be computed under separate accounting, so an exemption computed by separate accounting should not be directly applied against the consolidated tax liability either in the year the income was generated or in the future.

Union acknowledges that the Certificate does not directly address the carry-over issue. The principle that exemption contracts should be strictly construed against the taxpayer is applicable here to prevent an inference that carry-overs are permissible. The "unused" portion does not reflect the exempt plant's actual tax liability in the absence of the exemption.

Since we find no merit to any of the challenges to the Department's decision, the superior court decision is AFFIRMED.

---

**14.** After arguing the letter constitutes a ruling on this issue, Union argues that it can not now be revoked retroactively. Such revocation, Union contends, would violate both I.R.C. regulations and statutes made applicable to Alaska, as well as the Alaska Administrative Procedure Act, AS 44.62.240. Union also contends that the doctrines of estoppel and duty of consistency preclude the Department from changing accounting methods. Since we conclude that the letter is not a ruling addressing the application of the exemption, we do not reach these issues.

**15.** *See Wien Air Alaska, Inc. v. State, Dept. of Revenue,* 647 P.2d 1087, 1093 (Alaska 1982).

**16.** One related point raised by Union bears mention. Union argues the state can not change its position from that adopted below, pointing to the different theory the state advanced in superior court to support affirmance of the Department decision. The state is not prevented from presenting a new theory to justify affirmance of the administrative decision. *Rutherford v. State,* 605 P.2d 16, 21 n. 12 (Alaska 1979).