*475 OPINION OF THE COURT
Helen E. Freedman, J.
This CPLR article 78 proceeding presents novel questions concerning the application of RPTL 421-a to a multiple dwelling which includes both new construction and an existing structure rehabilitated for commercial use.
Petitioner, 645 First Avenue Manhattan Company, applied to respondents for tax benefits with respect to a 53-story residential condominium that it was building on top of the old East Side Airlines terminal. The terminal building itself was to be rehabilitated for commercial use. Respondents granted the application only to the extent that section 421-a benefits were accorded to the new construction, the residential portion of the building, and denied with respect to the rehabilitated commercial structure.
Petitioner challenges as arbitrary and capricious and unlawful the following actions by respondents with respect to tax years 1985/1986 and 1986/1987: (1) the exclusion of the preexisting commercial structure from section 421-a tax benefits; (2) the computation of the percentage of nonresidential space within the property; (3) the tax classification and rate applied to petitioner’s property for the years under review; and (4) the computation of what is known as the minimum tax (mini-tax) applicable to the subject property.
Respondents, Commissioner of Finance (Biderman), Commissioner of the Department of Housing Preservation and Development (Crotty), and President of the Tax Commission (Mann) (collectively, the City), argue that they have correctly applied the law to all challenged items. They assert, in addition, that petitioner’s exclusive remedy to challenge excessive tax assessments are tax certiorari proceedings pursuant to RPTL article 7, which have been commenced by petitioner and are still pending. Respondents also allege that the amended petition as against respondents Crotty and Mann should be dismissed for lack of personal jurisdiction and as time barred under CPLR 217.
Petitioner responds that an article 78 proceeding is the appropriate vehicle to challenge respondents’ actions and that its amended petition against all respondents is proper and timely.
THE law
In an attempt to encourage construction of new housing in New York City, the State Legislature enacted RPTL 421-a, *476 which provides a substantial benefit by means of a partial exemption from real property taxes for owners of multiple dwellings during the period of construction and for a 10-year period following completion. (L 1983, ch 401, §§ 7, 8.) RPTL 421-a is entitled "Exemption of new multiple dwellings from local taxation”. Section 421-a (2) (a) (i) states that in cities over one million:
"new multiple dwellings * * * shall be exempt from taxation for local purposes * * * as follows:
"(A) except as otherwise provided herein there shall be full exemption from taxation during the period of construction * * * and for two years following such period;
"(B) followed by two years of exemption from eighty per cent of such taxation;
"(C) followed by two years of exemption from sixty per cent of such taxation”.
Recognizing a potential long-term increase in the City’s tax base from new construction of commercial space, the law also allows a limited amount of commercial space (not to exceed 12%) to be included within the exemption if it is part of a qualified multiple dwelling project. (RPTL 421-a [2] [d]; 175 NY Legis Ann, at 303.) All commercial space not included within the exemption is taxed at the normal rate. RPTL 421-a (2) (d) provides that: "if the aggregate floor area of commercial, community facility and accessory use space exceeds twelve per cent of the aggregate floor area * * * tax exemption shall be reduced by an amount equal to the per cent of the aggregate floor area by which the aggregate floor area of commercial, community facility and accessory use space exceeds twelve per cent of the aggregate floor area of the multiple dwelling”.
In addition, in order that the City not lose the tax revenues obtained from property prior to construction, a minimum tax or "mini-tax” must be paid during the exemption period. (1971 NY Legis Ann, at 402.) Thus, RPTL 421-a (2) (b) (i) provides that the following taxes are due on the exempt portion of the property in addition to the normal taxes on the nonexempt property: "real property taxes on the assessed valuation of such land and any improvements thereon in effect during the tax year preceding the commencement of such construction” (base years).
Once the assessed valuation for the year prior to construction has been determined, the prevailing or normal tax rate is *477 applied each year to determine the mini-tax obligation. The property must be classified at the end of those years so that the appropriate tax rate can be applied. RPTL 1802 establishes four classifications of real property in the City including class 2 residential properties taxed at a rate of 9.15% in 1985/ 1986 and 1986/1987, and class 4 commercial properties taxed at a rate of 9.46% in those years.
Benefits under section 421-a are not available in certain areas, including that in which the Corinthian is located, for new construction commenced after November 29, 1985. (Administrative Code of City of New York § 11-245.)
FACTS
Petitioner, 645 First Avenue Manhattan Company, purchased the East Side Airlines terminal building, located at 330 East 38th Street in Manhattan on or about June 14, 1985. The structure, consisting of two stories above a basement-level garage, had been a commercial terminal from which buses transported passengers to various airports.
Petitioner offered a condominium development plan for the site which called for construction of a 53-story residential mixed-use condominium apartment house known as the "Corinthian”, using the air rights over the existing terminal building, and for rehabilitation of the preexisting terminal building to contain a garage and other commercial space. The new multiple dwelling structure was to be constructed above the preexisting building, supported by columns driven into the ground through the basement garage and up through the roof of the existing building. Construction began on October 11, 1985, some seven weeks before the date ending section 421-a benefits for buildings located in midtown Manhattan. The tax years at issue were the first two years of the construction period.
Until the spring of 1986, an air bubble enclosed a tennis club operated on the roof of the terminal, and the basement garage was a public parking facility.
On October 22, 1985, petitioner filed an application for preliminary certification of eligibility for RPTL 421-a tax benefits with respondent New York City Department of Housing Preservation and Development (HPD). As part of its application, petitioner was required to submit certification of the number and per cent of square footage proposed for nonresidential use in the building. Petitioner certified that *478 nonresidential space would total 12.5% of the aggregate floor area.
HPD determined preliminarily that the property was entitled to the section 421-a exemption with the exception of the space within the renovated commercial structure since that would be fully contained within the old commercial structure. Moreover, the agency’s architects calculated that the commercial space in the proposed project would constitute 12.9% of the aggregate floor area, not 12.5%.[1]
HPD also determined that the mini-tax would be based on the assessed valuation of the entire property in the base year rather than the assessed valuation of only the property eligible for section 421-a treatment, as urged by petitioner.
Once HPD made these determinations, they were forwarded to the Tax Commission, which determined the assessed valuation of the property, and then to the Department of Finance (Finance), which chose the tax rate to be applied and calculated the actual tax due.
Finance calculated the tax as follows. For each of the two years, the assessed valuation in the base year was added to the percentage increase in property value over the base year attributable to the ineligible property (i.e., assessed valuation in base year + 12.9% of increase in valuation over base year = taxable valuation). Finance determined that the class 4 (commercial) tax rate of 9.46% should be applied to the property’s taxable valuation for the years at issue on the ground that only commercial space within the old structure was in existence at those times.
Finance notified petitioner of these determinations on October 9, 1986. Petitioner then brought timely tax certiorari proceedings pursuant to RPTL article 7 to challenge the tax assessments for 1985/1986 and 1986/1987. Those proceedings are still pending.
Petitioner then commenced this article 78 proceeding against respondent Biderman on February 6, 1987. Respondent’s answer, served April 2, 1987, alleged, inter alia, that HPD was a necessary and proper party to the proceeding. An amended petition, not including an amended or supplemental *479 notice, was served by petitioner on April 21, 1987, adding respondents Grotty and Mann.
On the return date of the original petition, May 1, 1987, the court (Sherman, J.) marked off the original petition on the ground that the amended petition constituted a new proceeding. Thereafter, on May 4, 1987, petitioner served the current amended petition with a notice of amended petition on all respondents.
APPROPRIATENESS OF AN ARTICLE 78 PROCEEDING
The first issue to be addressed concerns the appropriateness of an article 78 proceeding.
The City argues that RPTL article 7 provides the exclusive remedy for all of petitioner’s claims.
An article 78 proceeding is an appropriate method for challenging the government’s interpretation and application of a statutory tax exemption under RPTL 421-a where no factual disputes are presented. (Hewlett Assocs. v City of New York, 57 NY2d 356 [1982]; Matter of Trizec v City of New York, NYLJ, June 22, 1983, at 7, col 1 [Sup Ct, NY County, Klein, J.], affd 107 AD2d 593 [1st Dept 1985], revd on other grounds 66 NY2d 807 [1985].) The disputes in the current proceeding involve the City’s interpretation and application of the law rather than issues of fact.
The petitioner in Hewlett Assocs. (supra) challenged the City’s decision that a property tax exemption did not apply to certain commercial space within its property in an article 78 proceeding. Rejecting the City’s contention that RPTL article 7 was the petitioner’s sole option, the Court of Appeals ruled that property owners are not "relegated to tax certiorari proceedings to seek review of the city’s * * * denial of the accessory use space exemption.” (Supra, at 365.)
Subsequent to Hewlett (supra), the Appellate Division, First Department, in Trizec (supra), affirmed the lower court’s decision that article 78 is an appropriate vehicle to attack the City’s construction and application of RPTL 421-a. Although the Court of Appeals ultimately dismissed the petition as time barred, the decision recognized the applicability of article 78 to this type of proceeding. (66 NY2d 807, 809, supra.)
In addition, the pendency of RPTL article 7 petitions is not a basis for barring this CPLR article 78 proceeding. Those petitions attack, in part, the total assessed valuation of the property prior to the application of the section 421-a exemp *480 tion. There is some overlap between the two proceedings since RPTL 1802 (3) provides that challenges to property classification may be pursued under article 7. However, since this article 78 challenge addresses issues for which it has been held an appropriate proceeding by the Court of Appeals, and most of the issues raised herein are not presented in the article 7 proceeding, this court shall proceed to address those issues.
But first this court must dispose of the City’s argument that the amended petition is time barred as against respondents Crotty and Mann. The court finds that service of the amended petition on those respondents relates back to the timely service of the original petition on respondent Biderman. All claims arise out of the same conduct or transaction. The new respondents are united in interest with the original respondent since their joint actions determined the tax status, classification and calculations with respect to the property. Finally, the added respondents knew or should have known that the matter would have been brought against them as well especially in light of the City’s insistence that the Commissioner of HPD (Crotty) and the President of the Tax Commission (Mann) be added as parties. (See, Matter of Great E. Mall v Condon, 36 NY2d 544 [1975].)
ENTITLEMENT OF ENTIRE STRUCTURE TO RPTL 421-a BENEFITS
The next issue presented is whether HPD properly determined that those portions of petitioner’s project constituting the rehabilitation of a preexisting structure do not qualify for section 421-a tax benefits.
As noted above, section 421-a tax benefits are intended to encourage new residential construction. The statute provides that such exemption is to be given to "new multiple dwellings” (RPTL 421-a [2] [a]), but that commercial space included within such structures is entitled to exemption as well, to the extent that it does not exceed 12% of the aggregate floor area of the structure (the 12% bubble). (RPTL 421-a [2] [d].)
The City has granted an exemption to the "new multiple dwelling” constructed atop the old East Side Airlines terminal building, but has denied such exemption to the rehabilitated terminal building itself. This was not based on any determination made with respect to the 12% bubble concept under section 421-a (2) (d), but a determination that the "Corin *481 thian” should be treated as two separate buildings for tax purposes, one a new multiple dwelling qualifying for section 421-a benefits, and the other a rehabilitated commercial building to which section 421-a does not apply. Therefore the bubble concept would not apply.
Petitioner claims that the entire site should receive section 421-a tax benefits, claiming entitlement under the bubble provision for the commercial space in the substantially reconstructed terminal building. Petitioner is arguing that the entire structure, once all work is completed, will really be one building and should be treated as such.
The City has taken the position that unitary treatment of the site necessarily leads to a total denial of exemption, since the entire project cannot be described as new construction of a multiple dwelling unit.[2] Rules and regulations of the Department of Housing Preservation and Development section 1-3 (8) (a) defines qualified new construction under section 421-a as construction commencing pursuant to "issuance of a new building permit by the Department of Buildings for an entire new building”. The City notes that the Department of Buildings issued an alteration permit, not a new building permit, to allow the construction to go forward, and argues on that basis could have denied exemption entirely. Although the parties dispute the extent of the gutting and demolition, it is clear that the footings and skeletal structure remain. In fact, columns have been put through the structure to support the new construction.[3]
The concept of two buildings on a site has been used to explain tax decisions in section 421-a cases where only one building has been involved. Thus, the Appellate Division in Teleon Realty Corp. v City of New York (88 Misc 2d 767 [Sup Ct, NY County 1976], mod 68 AD2d 858 [1st Dept 1979], affd on opn below 50 NY2d 824 [1980]) explained that a single *482 building could be treated as two, one entitled to section 421-a exemption and the other fully taxed. Surely here, where there was one structure to begin with, and another added, it is reasonable to view the resulting complex as consisting of one building exempt under section 421-a and the other fully taxed.
Petitioner’s reliance on Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y. (134 Misc 2d 303 [Sup Ct, NY County 1986, Greenfield, J.], affd on opn below 126 AD2d 497 [1st Dept 1987], lv granted 69 NY2d 609) is misplaced. That case held that in furtherance of the legislative intent to encourage new residential construction while also increasing the City’s commercial tax base, new independent commercial condominium units within a section 421-a eligible structure must be deemed eligible for inclusion within the 12% bubble. (134 Misc 2d, at 310, 311.) However, the Legislature specifically eliminated section 421-a tax benefits for rehabilitated structures in a 1983 amendment to the statute. Moreover, the legislative intent of encouraging new construction of multiple dwelling units is not served by affording tax-exempt status to the renovation of an existing commercial structure.
PROPORTION OF SITE OCCUPIED BY NONEXEMPT BUILDING
Having decided that there are, in effect, "two buildings”, the court need not decide whether the commercial space fits within the "bubble”, since it has been determined that that space is not within the building entitled to exemption. Instead, the court must next address the dispute over the proportion of the total site that the nonexempt "building” occupies. This is because the normal tax will be applied to that proportion which is nonexempt.
The City argues that the aggregate floor area of each of the two "buildings” is the appropriate measure, while petitioner claims that the percentage of "interest in common areas” set out in the offering plan should be relied upon. The aggregate floor area of the commercial units has been determined by HPD to be 12.9% of the entire structure, while the offering plan assigns 11.5% of the common interest to the commercial units.
The statute does not mandate use of any particular formula, but does use the "aggregate floor area” formula for determining whether commercial space is greater or less than the 12% "bubble” described above. (RPTL 421-a [2] [d].) The Appellate Division has found the percentage of interest in common *483 areas, as set out in an offering plan, to be one of "various rational methods of * * * apportionment” for the purposes of fixing taxes, (Teleon Realty Corp. v City of New York, 68 AD2d 858, 859-860, supra.)[4] More recently, in Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y. (134 Misc 2d 303, supra), the trial court, after consideration of a number of statutory provisions, concluded (at 311): "This court sees no difficulty in interpreting these statutory provisions to mean that * * * each [residential and commercial] condominium unit should * * * be * * * taxed its respective percentage of the common interest.”
In Alamo (supra), the court was not presented by the City with any credible alternative to allocation based on respective percentage of the common interest, but rather with a scheme which the court concluded made no sense. In this case, however, the parties have each calculated the aggregate floor area of the commercial and noncommercial space.[5] The court therefore concludes that the Appellate Division affirmance in Alamo (supra) is not dispositive of this issue, and that the City, having presented a rational alternative which is not inconsistent with section 421-a, and is used elsewhere in section 421-a, prevails on this issue.
APPLICATION OF COMMERCIAL RATE TO PREEXISTING STRUCTURE
The next issue is whether the City correctly applied the higher commercial tax rate to the preexisting building in the two tax years in question.
The City took such action on the ground that the terminal building was the only structure on the property for those two years, that the building had formerly been used for commercial purposes and, after rehabilitation, would once again be used for such purposes, and that the only activity on the property other than construction was the operation of the tennis club and garage.
Petitioner counters that the entire project will be primarily residential, and indeed, the City has determined that the *484 residential tax rate will be applied to the entire building in all subsequent years, since the residential tower has now been constructed.
The City also takes the position that RPTL 421-a mandates application of the commercial tax rate to separate condominium units that do not qualify for the 12% exemption. That interpretation is the matter at issue in Alamo (supra), scheduled for argument in the Court of Appeals this month. If, indeed Alamo is reversed, respondents may well be entitled to revert to commercial rates for the commercial condominiums.
In view of the fact that the building was totally commercial and is now mixed commercial and residential, it does not appear arbitrary or irrational that the commercial rate would remain for the two years prior to petitioner’s construction of the residential structure and then for the residential rate to apply.
APPORTIONMENT OF THE MINI-TAX
The final issue presented by the parties is the manner in which the mini-tax is to be computed.
Under RPTL 421-a (2) (b) (i), the mini-tax is defined as: "real property taxes on the assessed valuation of such land and any improvements thereon in effect during the tax year preceding the commencement of such construction”. The City reads this language literally, and asserts that the mini-tax in this case is the entire assessed valuation on the property.
Petitioner argues that in situations where the section 421-a tax benefits are being applied to only a portion of a structure, the courts have read section 421-a (2) (b) (i) as prorating the mini-tax so that only that portion is collected as is proportionate to the exempt portion of the structure. (See, e.g., Teleon Realty Corp. v City of New York, 68 AD2d 858, 859-860, supra.)
It does appear that the City is much closer to petitioner’s position here than it was in Teleon (supra) however. There, the City sought to collect the full mini-tax as well as the full tax on the commercial portion of the project. (Teleon Realty Corp. v City of New York, supra, at 859.) Here, however, the City seeks to collect only the full mini-tax and the proportionate (12.9%) share of the increase in the value of the property attributable to the commercial portion of the ultimate structure.
It appears to this court that the result of the City’s action is that the assessed tax valuation for the tax years in question *485 will be the same. Thus, if the mini-tax valuation (M) were apportioned into its residential (MR) and commercial (MC) components, and the remaining valuation were divided into the increase (I) due to the work on the commercial (IC) and residential (IR) structures, the City is claiming that the valuation which is taxed during the years in question is (M + IC), and the petitioner is claiming that the valuation that is taxed is (MR + C) — in each case the valuation consists of three elements, MR, MC, and IC, and excludes IR.
There may be some significance to the two approaches, although this is not clear from the papers, since under the City’s approach MR is taxed at the commercial rate for the years in question, whereas under petitioner’s approach it might be possible to tax MR at the residential rate even if the balance of the valuation is taxed at the commercial rate. Since the literal language of the statute favors the City’s position, and since the City has recognized the injustice addressed in Teleon (supra) by the manner in which it would apportion the tax on the increase in value of the property, the court upholds the City’s position on this claim.
Accordingly, for the foregoing reasons, respondents’ determinations are upheld and the petition is denied.

. The parties have indicated in supplemental papers that there is a health club to be constructed in the common area of the "new” building amounting to approximately 1.37% floor area and the City has agreed to recompute petitioner’s taxes for the years in question to include this space as exempt.

. Petitioner appears to have acknowledged that the City took this position even before construction began. See June 4, 1986 letter from Jay Segal, counsel to petitioner, to Lawrence Finkelstein, HPD, page 3, which, after referring to an August 2, 1985 letter from HPD to petitioner which pointed out that section 421-a benefits are available only for projects considered new construction, argued in response that "Obviously, the residential building being constructed on top of the Terminal is new construction and is, therefore, pursuant to your August 2 letter, eligible for benefits.” (Affidavit of Lawrence B. Finkelstein, July 15,1987, exhibit A.)

. The City posits that had total demolition occurred, petitioner might not have met the November 29, 1985 deadline for starting construction and receiving section 421-a benefits.

. While it may be rational to use the offering plan, it should be noted that the developer thereby has the opportunity to allocate a greater proportion of the building to the exempt units.

. The City claims the 12.5% figure certified by petitioner is too low, and should be 12.9%. Petitioner has not given the court sufficient basis to reject that figure, but has instead relied upon its legal argument that 11.5% should be used.