OPINION OF THE COURT
Simons, J.
Petitioner is the owner and developer of a newly constructed multiple dwelling in New York City and entitled to the tax exemption authorized by section 421-a of the Real Property Tax Law. The owners of such properties pay only a minimum or "mini tax” which is calculated not on the assessed value of the new improvement but by applying the current tax rate to the assessed value of the property in the year before construction began. The full benefit of the exemption may be claimed during the period of construction and for two years after construction is completed. Thereafter, it is phased out in increments of 20% every two years (RPTL 421-a [2] [a] [i]-[v]).
Petitioner’s building is a 32-story mixed-use condominium building: it contains 223 residential units and 5 nonresidential units consisting of a parking garage, a drug store, a fruit and vegetable store, a bakery/pastry cafe and a children’s clothing store. The commercial space in the building comprises less than 12% of the aggregate floor area of the entire building. Thus, petitioner contends that under the plain meaning of RPTL 421-a, the entire building, including its commercial condominium space, is eligible for the full range of tax benefits granted by the statute and that the proper assessed value for the building during construction and for two years after its completion was $757,000, the mini tax assessed value on the property prior to construction.
The city determined, however, that only the residential condominium units in the building should be accorded the *343 421-a tax exemption and assessed the building at $1,621,691. It arrived at this assessment by apportioning the amount of the mini tax assessment, $757,000, between the residential and commercial units. Inasmuch as the residential units comprised 92.41% of the common interest of the building, 92.41% of the mini tax assessment, or $699,575, was allocated to them. A transitional assessment of $12,156,000 was applied to the whole property, however, and 7.59% of that assessment, or $922,116, representing the aggregate common interest of the commercial units which the city considered nonexempt, was added to the residential portion of the mini tax assessment. The resulting 1983/1984 assessment of the premises thus became $1,621,691, the sum of $699,575 (residential) + $922,116 (commercial), rather than the $757,000 mini tax assessment claimed by petitioner.
Petitioner, contending that the city erred by applying the exemption to the individual units rather than on a building-wide basis, commenced this article 78 proceeding seeking to annul respondents’ determination, to compel them to assess the building at $757,000 for the year 1983/1984 and to refund excess taxes paid for that year. Special Term granted the petition (134 Mise 2d 303) and the Appellate Division affirmed on the opinion at Special Term. There should be an affirmance.
Respondents’ position is that entitlement to a tax exemption is never to be presumed; the taxpayer’s right to the benefit must appear by clear and unambiguous statutory language (see, Matter of Mobil Oil Corp. v Finance Adm’r, 58 NY2d 95, 99; County of Herkimer v Village of Herkimer, 251 App Div 126, 127, affd 279 NY 560). They maintain that the provisions of section 421-a are not clear and unambiguous. Accordingly, they assert that their interpretation of the statute should be given deference because they are the parties charged with implementing it (see, Matter of John P. v Whalen, 54 NY2d 89, 95; Matter of Slattery Assocs. v Tully, 79 AD2d 761, affd 54 NY2d 711). They support their claim of ambiguity by (1) reference to previous decisions of this court dealing with the exemption (see, Hewlett Assocs. v City of New York, 57 NY2d 356; Teleon Realty Corp. v City of New York, 88 Misc 2d 767, mod 68 AD2d 858, affd on opn below 50 NY2d 824), (2) the alleged inconsistency of petitioner’s claim to an exemption calculated on a building-wide basis, rather than a unit-by-unit basis, with Real Property Law § 339-y and RPTL 580 and 581, relating to individual assessment of condominiums, and (3) the *344 contention that the primary purpose of the statute, encouraging residential building, will not be furthered if the exemption is applied to commercial condominiums. Respondents note that residential units in rental and cooperative properties benefit by reduced rents if the exemption is applied building-wide, but no similar benefit accrues to residential condominium owners if commercial condominiums receive a tax benefit by receiving the exemption. However, the provisions of section 421-a apply to "new multiple dwellings” which the statute defines as a dwelling occupied as a residence or home by three or more families "whether such dwelling is rented or owned as a cooperative or condominium” (RPTL 421-a [1] [c]). Thus, for purposes of according the tax exemption, it directs that no distinction is to be made based upon the nature of the building’s ownership.
As originally enacted in 1971 (as RPTL 421, L 1971, ch 1207), the statute left unclear the extent to which nonresidential space in new buildings qualified for RPTL 421-a tax benefits. The city interpreted this section to authorize exemption for accessory uses necessary to the residential units but not commercial uses, and the obligation of identifying which space was actually accessory or incidental to the residential units was left to the agencies charged with implementing the statute (see, Hewlett Assocs. v City of New York, 57 NY2d 356, 367-371, supra). A typical question was whether a parking garage designed primarily for the building’s tenants, but open to members of the general public, was incidental to the residential units. In 1975 the Legislature clarified the matter by amending the statute to provide that in any multiple dwelling entitled to exemption: "in the event that the aggregate floor area of commercial, community facility and accessory use space exceeds twelve per cent of the aggregate floor area * * * there shall be a diminution of such tax exemption in an amount equal to the ratio of floor area of commercial, community facility and accessory use space in excess of twelve per cent of the aggregate floor area”. (RPTL former 421 [2] [now RPTL 421-a (2) (d)].)*
Thus, although the original 1971 statute was silent with respect to commercial uses, community facilities or accessory uses in mixed-use buildings, thereby inviting interpretation, the amended statute, which applies to petitioner, explicitly recognizes that such uses are entitled to the exemption and *345 establishes a fixed formula, based upon the ratio of aggregate floor area devoted to each use, to establish the maximum commercial use which may be incorporated in the building without impairing the exemption. It further provides that even if the commercial use exceeds the maximum 12% of the aggregate floor area allowed the exemption is not lost but only diminished pro tanto by the area exceeding 12%. Thus, it appears that, far from disqualifying commercial uses from the benefit of the exemption, the Legislature expressly recognized their limited entitlement to it by the 1975 amendment.
Respondents’ interpretation of the statute — that it must be applied on a unit-by-unit basis excluding commercial condominiums — would not only run counter to the express provisions of the statute but it would also exclude all condominium property from the tax exemption of RPTL 421-a because individual units could never qualify as "multiple dwellings” housing three or more families. We are obliged to read the words of the statute in their natural and most obvious sense (McKinney’s Cons Laws of NY, Book 1, Statutes § 94) and when we do so it appears that the Legislature intended all properties, regardless of the type of ownership, to receive the benefit of the exemption. If all the statute’s parts are to be harmonized, and given meaning, as they should be (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 98, 231), then the exemption is to be applied to the building as a whole, to the extent permitted, and not to parts of it. In the case of condominium units that means the mini tax assessment must be applied to the entire building and the assessment then apportioned on a unit-by-unit basis as required by Real Property Law § 339-y. The failure to do so effectively excises from the statute buildings held in condominium ownership and applies the exemption differently depending on the type of ownership.
Respondents contend further that commercial uses are entitled to the benefit of the exemption only to the extent that they are "incidental” to the residential use. Nothing in the statute supports that view. They contend, however, that such an interpretation is warranted by this court’s decisions in Hewlett Assocs. v City of New York (57 NY2d 356, supra) and Teleon Realty Corp. v City of New York (68 AD2d 858, affd on opn below 50 NY2d 824, supra).
The pertinent issue in Teleon was whether the minimum tax required under the statute could be discharged by the *346 commercial portion of the premises without tax liability on the residential units. The Appellate Division held that it could not, that residential portions of the building must pay their proportionate share of the mini tax, and that it was error to apply the 1975 amendment of the statute to property constructed before the amendment was enacted (68 AD2d 858, 860, supra). We affirmed on the Appellate Division decision. Manifestly, that holding has no bearing on the present case.
In Hewlett Assocs. v City of New York (supra), the dispute concerned accessory use space; petitioner did not challenge the city’s practice of excluding commercial space from the exemption before 1975. After examining the history and purposes of the statute in some detail, we overruled Teleon to the extent of holding that the 1975 amendment applied to buildings constructed before its enactment and subsequent to the original statute in 1971. Passing on the accessory use claim, we held that whereas the city had previously granted the exemption to all accessory use space or space incidental to residential uses, the 1975 amendment limited the exemption to no more than 12% of the combined total accessory use and commercial space. Our comments, in dictum, on the reasonableness of the city’s interpretation of the pre-1975 statute, in a case which did not address the application of the exemption to mixed-use properties, does not imply acceptance of the city’s interpretation of the present statute amended specifically to address the allowable portion of commercial and accessory use footage which may benefit from the statutory exemption. In short, the ambiguities existing because the statute did not address the subject before 1975 were removed by the express provisions of the 1975 amendment. Inasmuch as the statutory language is clear, we must implement it as written and may not defer to an interpretation made by the agency charged with enforcement of the statute (see, Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 62 NY2d 539, 545; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).
Nor do we agree with respondents that such an interpretation defeats the purpose of the legislation. The statute was enacted principally to correct a shortage of affordable housing by encouraging new construction of regulated residential units by awarding them tax benefits. Its purposes were far broader than residential development, however. They included promoting construction of new buildings, greater employment in the construction industry and the long-range increase and stabilization of the city’s tax base (see, Sponsor’s Mem, 1975 NY *347 Legis Ann, at 303-304; see, Bill Jacket, L 1975, ch 857, Mem of Leonard E. Yoswein, Legislative Representative of City of New York, dated July 11, 1975 [outlining the reasons for supporting the amendment]). Those broad purposes are not impaired by granting a pro rata benefit of the exemption to a limited amount of commercial space in mixed-use condominiums. Thus, the language of the statute is consistent with the conclusion that the Legislature thought that more multiple dwellings, and thus more residential units, would be built if the developers were permitted to develop the ground floor of the building to its highest and best use in New York City— typically commercial development — without losing the benefit of the full exemption.
Finally, this interpretation is not inconsistent with Real Property Law § 339-y or RPTL 580 and 581 which deal with the imposition of taxes on condominium units. The purpose of article 9-B of the Real Property Law (Condominium Act), in which section 339-y is found, was to establish broad rules of law encouraging and regulating condominium development generally. The purpose of section 339-y was to insure that owners of individual condominium units would be insulated from responsibility for taxes due by owners of other units within their buildings by requiring separate tax accounts for each unit (see, Mem of Assn of Bar of City of NY, Committee on Real Property Law recommending adoption of Real Property Law art 9-B [Condominium Act], 1964 NY Legis Ann, at 356, 357). The purpose of RPTL 581 was to insure that owners of condominium and cooperative properties would be taxed fairly compared to rental properties held in single ownership and not penalized because of the type of ownership involved in their multiple dwellings (see, Matter of Marks v Pelcher, 58 AD2d 812, affd 49 NY2d 954). A similar purpose is manifested in the definition of multiple dwelling found in RPTL 421-a (1) (c). This purpose would be defeated, however, if the city’s interpretation of the statute were applied, segregating condominium units, and implementing the statutory exemption on the basis of the use of the units involved. Indeed, condominium units, residential or commercial, would never qualify for the exemption because, once segregated, they could not meet the definition of multiple dwellings. If the application we adopt offers an unfair tax advantage to commercial condominiums over other business properties, as respondents suggest, that is a matter for the New York City Council, which by local law can restrict, limit or condition the eligibility of benefits *348 under this section (see, RPTL 421-a [2] [i]) or the State Legislature.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

 The section has since been modified further without relevant change.