OPINION OF THE COURT
Edward H. Lehner, J.
The issue here is whether sums paid pursuant to an agreement between Peat Marwick Main & Co. (petitioner) and the operator of Madison Square Garden (the Garden) providing for petitioner’s exclusive use of a luxury box (the box) in the Garden should be deemed "rent” for the purposes of the New York City commercial rent or occupancy tax (the tax). The court holds that such payments are not rent, .and therefore the tax is inapplicable thereto.
FACTS
Petitioner, a firm of certified public accountants, entered *1094 into an agreement with the Garden in 1980 for the exclusive use of the box "during all times in which events are held in the arena to which tickets of admission are sold to the public” for the three-year period commencing September 1, 1980. The box is an area approximately 300 square feet suspended from the ceiling of the Garden. The agreement refers to the parties as "lessor” and "lessee” and the payments required to be made thereunder as "rent”, with the Garden responsible for the repair and maintenance of the box, its cleaning and the furnishing of utilities. Petitioner’s right of access to the box is "solely by presentation of passes to the event”, and it is entitled to have not more than 10 persons plus 1 attendant occupy it during any event. The 1980 agreement was renewed in 1983 for three additional years to and including August 31, 1986.
Petitioner has never reported the payments of "rent” on the box on its returns covering rental premises occupied by it in the city, and apparently the Garden took a credit on its returns for a sum equal to the amount of tax that would be payable if petitioner were liable therefor. However, petitioner has paid the sales tax imposed on admissions pursuant to subdivision (f) (1) of section 1105 of the Tax Law.
Petitioner acknowledges that it uses the box for entertainment purposes in connection with its practice of accounting.
At oral arguments, the Corporation Counsel was unable to advise the court as to whether the tax was being imposed on any other "occupant” of a luxury box in the Garden or of similar facilities at the baseball stadia.
THE STATUTE
Section 11-702 of the Administrative Code of the City of New York imposes the tax (with the percentage depending on the amount of annual rent) on a "person paying or required to pay rent for premises as a lessee, sublessee, licensee or concessionaire.” (Administrative Code § 11-701 [3].) The term "premises” is defined as "[a]ny real property or part thereof, and any structure thereon or space therein” (Administrative Code § 11-701 [4]). The tax is payable with respect to any "premises in the city occupied, used or intended to be occupied or used for the purpose of carrying on or exercising any trade, business, profession, vocation or commercial activity” (Administrative Code § 11-701 [5]).
*1095 THE CONTENTIONS OF THE PARTIES
Petitioner asserts that the agreements between it and the Garden are not leases, and the "rental” imposed pursuant thereto is nothing more than an admission charge for 10 tickets to view the various events, and it has paid the sales tax imposed on admissions.
The city contends that: (i) since the subject agreements refer to the parties as "lessor” and "lessee” and the payments as "rent”, the agreement is a lease and the payments made pursuant thereto are subject to the tax; (ii) that there is no provision in law that makes the sales tax on admissions and the commercial rent or occupancy tax mutually exclusive; and (iii) the box is used for carrying on "commercial activity” because petitioner uses it "for maintaining, upholding and securing business relationships with its clients and creating goodwill and thus * * * carrying on a significant part of its accounting business.”
DISCUSSION
The city’s request that this proceeding be transferred to the Appellate Division pursuant to CPLR 7804 (g) is rejected as there is no dispute as to the facts and the issue is not whether the determination is "supported by substantial evidence” (CPLR 7803 [4]), but rather is solely a question of law as to whether the consideration paid for the use of the box constitutes rent for premises taxable under section 11-701.
The fact that petitioner paid the admissions tax is not conclusive of the issue as subdivision (d) of section 11-702 provides that the tax is payable "in addition to any and all other taxes”.
As "a general rule, a statute which levies a tax is to be construed most strongly against the taxing authority and in favor of the taxpayer”, but "a contrary presumption is true when a court interprets a statutory exclusion”. (Matter of SIN, Inc. v Department of Fin., 126 AD2d 339, 343 [1st Dept 1987], affd 71 NY2d 616; see also, Matter of Mobil Oil Corp. v Finance Adm’r of City of N. Y, 58 NY2d 95 [1983].) Here we are not dealing with a statutory exemption, but rather the applicability of the tax to the subject agreements. Hence, the construction should be in favor of the taxpayer.
Further, since "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of *1096 legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency”. (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459; see also, Matter of SIN, Inc. v Department of Fin., 71 NY2d, supra, at 620; Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y, 71 NY2d 340, 346 [1988].)
The agreements between the Garden and petitioner employ language traditionally found in leases of real property. However, the terminology used by the parties is not determinative of the issue as " 'we must look to the rights it * * * confers and the obligations it imposes’ in order to determine the true nature of the transaction and the relationship of the parties.” (Feder v Caliguira, 8 NY2d 400, 404 [I960]; see also, Matter of New York World-Telegram Corp. v McGoldrick, 298 NY 11, 18 [1948].) In Statement, Inc. v Pilgrim’s Landing (49 AD2d 28 [4th Dept 1975]) it was said (at 33) that "the end sought by the instrument rather than mere words governs its nature”.
Clearly the subject agreements, notwithstanding their language, are not leases as it "is the transfer of absolute control and possession of property at an agreed rental which differentiates a lease from other arrangements dealing with property rights.” (Feder v Caliguira, supra, at 404.) Here, petitioner may only use the box during the times an event is being held to which tickets are sold to the public. Thus, not only is the right to occupy barred when the Garden is not in use, but petitioner may not gain admission to events for which tickets are not sold, such as political conventions or rallies.
Although the agreements may not be leases, section 11-701 makes the tax also applicable to a licensee. A "license” has been said to confer "a personal privilege to do some act or acts on the land without possessing any interest therein.” (Todd v Krolick, 96 AD2d 695, 696 [3d Dept 1983], affd 62 NY2d 836 [1984]; see also, Rosenstiel v Rosenstiel, 20 AD2d 71, 76 [1st Dept 1963].)
Petitioner certainly can be said to have a license to occupy the box. But that also can be said of every ticketholder in the Garden who, by virtue of such possession, has a license to occupy a seat during the course of an event. That the 10 seats which petitioner has the right to occupy have walls around them does not make the payments with respect thereto any more subject to the tax than the payments made by season ticketholders whose seats are in the open.
, Petitioner, in entering into the three-year agreement, merely purchased admission to an unknown number of events, *1097 the number depending on various factors, such as whether the teams playing there gain entry into the playoffs, and what new sports will be added to the schedule (such as an arena football in 1988), or deleted therefrom (such as indoor soccer). That, because of the privacy and conveniences provided (including the maintenance of the box by the Garden), the resulting per ticket price for seats near the roof may be greater than that for seats nearest the playing area does not alter the fact that petitioner is in essence paying an admission fee to attend events scheduled by the Garden. As such, the court believes that it was not the legislative intent to make the payments therefor subject to the tax. If the city were to prevail, there would seem to be no reason why payments made for similar facilities at the baseball stadia, and even a season box at the opera, would not also be subject to the tax. Such a result is not called for by the legislation.
Moreover, the use to which the box is put would not bring it within section 11-701, which makes the tax applicable when the premises are "used for the purpose of carrying on or exercising any trade, business, profession, vocation or commercial activity”. (Administrative Code § 11-701 [5].)
Although prior to the ascent of Mark Jackson and Patrick Ewing the performance of auditing functions may well have been more exciting than viewing Knickerbocker basketball games, there is no claim by the city that accounting functions were being performed in the box.
The court interprets the statute as imposing a tax on the consideration paid for the right to occupy premises used for the practice of a profession or for the conducting of a business, including uses ancillary thereto, such as storage facilities, and not applicable to locations where only social entertainment occurs, as the latter does not constitute the requisite commercial activity.
The fact that petitioner deducts the payments to the Garden as a business expense for income tax purposes does not mandate a contrary result as it "is the use to which the premises are put which determines the applicability of the tax here involved and not whether petitioner may also obtain benefits under other taxing statutes.” (Matter of Penney Co. v Lewisohn, 40 AD2d 67, 69 [1st Dept 1972], affd 33 NY2d 528.)
*1098 CONCLUSION
In light of the foregoing, the petition in the article 78 proceeding is granted and the deficiency determination of respondent is annulled, and respondent shall refund any payments made pursuant thereto. In view of this disposition, the declaratory judgment action is dismissed as moot.