BOARD OF EDUCATION OF THE EAST SYRACUSE-MINOA CENTRAL SCHOOL DISTRICT et al., Respondents-Appellants, et al., Plaintiffs, v COMMISSIONER OF EDUCATION OF THE STATE OF NEW YORK et al., Appellants-Respondents.

Third Department, February 2, 1989

14

## APPEARANCES OF COUNSEL

*Robert E. Diaz (Bernard S. Forman* of counsel), for Commissioner of Education of the State of New York, appellant-respondent.

*Hancock & Estabrook (Robert D. Stone, James P. Burns* and *Martha L. Berry* of counsel), for The Board of Cooperative Educational Services for the Sole Supervisory District of Onondaga-Cortland-Madison Counties, appellant-respondent.

*O'Hara & Crough (Dennis G. O'Hara* and *Craig M. Atlas* of counsel), for Board of Education of the East Syracuse-Minoa Central School District and others, respondents-appellants.

*Andrew J. Nolte* for Board of Cooperative Educational Services for the Sole Supervisory Districts of Washinton-Warren-Hamilton-Essex Counties and others, *amici curiae.*

*David R. Kay (Warren H. Richmond, III,* and *Kevin A.*

*Seaman* of counsel), for Board of Cooperative Educational Services of Nassau County and others, *amici curiae.*

*Saperston & Day, P. C. (Lawrence A. Schultz* of counsel), for Eight Western New York BOCES Supervisory Districts, *amici curiae.*

### OPINION OF THE COURT

KANE, J. P.

The questions we face on this appeal concern the interpretation of Education Law § 1950 (14) and (4) (t). At issue is whether a Board of Cooperative Educational Services (hereinafter BOCES) must first obtain voter approval or the unanimous agreement of the component school districts (hereinafter CSDs) located within its boundaries before it may renovate any of its facilities.

The pertinent facts are as follows. In 1984, defendant BOCES for the Sole Supervisory District of Onondaga, Cortland and Madison Counties (hereinafter O-C-M BOCES) proposed to renovate a building to house its computer center services. The building was located on land previously acquired by O-C-M BOCES following a voter referendum. The majority of the funds for the renovations were appropriated in the 1986-1987 administrative budget and were transferred to a capital account. No voter approval or CSD consent was obtained for the renovations.

With respect to the necessity of obtaining CSD consent, defendant Commissioner of Education took the position that such consent was not required unless at least one of the CSDs had to contract indebtedness to finance its share of the renovation costs. In this case, no CSD has claimed that it needed to incur such indebtedness to pay for its share of the renovations. The Commissioner also issued a policy statement which stated, inter alia, that voter approval of a BOCES project was not required if it did not involve the acquisition of a building and/or land or an addition.

Plaintiff Board of Education of the East Syracuse-Minoa Central School District (hereinafter ESM) disputed the Commissioner's positions and, accordingly, commenced this action against the Commissioner and O-C-M BOCES, seeking a declaratory judgment that, *inter alia,* the Commissioner's policy regarding BOCES renovations was illegal and seeking to enjoin O-C-M BOCES from continuing without CSD consent or

voter approval.[1] After issue was joined, O-C-M BOCES moved to dismiss the complaint under CPLR 3211 or, in the alternative, for summary judgment dismissing the complaint. The Commissioner joined in the motion. ESM then cross-moved for partial summary judgment on the issues of CSD consent and voter approval.

Supreme Court granted ESM's motion insofar as it found CSD consent to be required. However, the court chose not to grant a declaratory judgment on the question of voter approval. Both O-C-M BOCES and the Commissioner (hereinafter collectively referred to as defendants) have appealed. ESM cross-appealed from so much of the court's decision that denied summary judgment on the requirement of voter approval.[2]

■■ We turn first to the question of the interpretation to be accorded Education Law § 1950 (14). Initially we note that, contrary to defendants' argument, the statute does not require any special knowledge or competence on the part of the administrative agency and we, therefore, need not defer to the agency's interpretation of the statute (see, Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y., 71 NY2d 340, 346; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). However, we are in agreement with defendants' assertion that Supreme Court erred in determining that the statute requires the unanimous agreement of CSDs before a BOCES may renovate its facilities.

Education Law § 1950 (14) provides in relevant part that:

"a. All provisions of this subdivision shall be applicable only if any agreement or agreements referred to herein shall be entered into by a [BOCES] and all of the [CSDs]. A [BOCES] and the [CSDs] may enter into an agreement providing for the acquisition or construction, including new construction, additions or reconstruction of facilities * * * and for the sharing of the cost of such acquisition or construction. Such agreement * * * shall (i) set forth the cost of such acquisition or construction and costs incidental thereto and (ii) provide for an allocation and apportionment of the costs of such acquisition

1. The complaint was later amended to include as plaintiffs the Boards of Education for the Central School Districts of Baldwinsville, Cazenovia, Chittenango, Westhill and North Syracuse.

2. ESM was joined in this appeal only by the Boards of Education for the Central School Districts of Baldwinsville, Cazenovia and Chittenango. The remaining plaintiffs have not appealed. Those that have appealed will hereinafter collectively be referred to as plaintiffs.

or construction among the [CSDs] * * * and the proportion of the total cost to be provided by each [CSD] * * *. Such agreement shall be executed by all the [CSDs] and such [BOCES]. Such agreement may provide that each [CSD] shall issue an agreed upon amount of its obligations in a total amount sufficient to acquire or construct such facilities, or that all [CSDs] shall together issue joint obligations * * *.

"b. * * * Each such [CSD] is hereby authorized to finance its share of the cost of the acquisition or construction of such facilities * * * either from any current funds legally available therefor or by the issuance of obligations".

Supreme Court, relying on the phrase "from any current funds legally available" (Education Law § 1950 [14] [b]), determined that CSD consent was required even where long-term financing was not necessary for a project. In our view, however, the court improperly segregated a few words from their context for purposes of construing the statute (see, Matter of Albano v Kirby, 36 NY2d 526, 530). The statute is couched in permissive terms: "A [BOCES] and the [CSDs] may enter into an agreement" (Education Law § 1950 [14] [a] [emphasis supplied]). Reading the statute as a whole supports the Commissioner's assertion that if financing by one or more CSDs is not required, then the statute is inapplicable and no agreement is required.

In reaching this conclusion, we are also guided by the principle of statutory interpretation that a court should attempt to effectuate the intent of the Legislature (Matter of Duncan v Perales, 135 AD2d 1127). Here, the Commissioner's statutory construction is consistent with the underlying purpose of Education Law § 1950 (14) (see, Matter of New York Pub. Interest Research Group v Town of Islip, 71 NY2d 292, 302). Before the statute was enacted, the only way to finance acquisition or construction of BOCES facilities was through an agreement with the State Dormitory Authority with the latter providing the financing through the issuance of obligations (see, Education Law § 1950 [13]). In a memorandum of the sponsor of Education Law § 1950 (14), when it was initially proposed for passage in 1976, the need to provide new financial alternatives to BOCES construction was emphasized and it was noted that this would be done by allowing CSDs to issue debt to finance such construction (mem of Senator Warren M. Anderson, 1976 NY Legis Ann, at 145). A budget report also states that the purpose of the proposed law was to "allow each

[CSD] to issue its own school district bonds to finance its share of the acquisition and/or construction costs of a BOCES facility" (Budget Report, Governor's Bill Jacket, L 1976, ch 728). Thus, the statute was enacted to allow CSDs to issue their own debt in financing BOCES projects. Education Law § 1950 (13) contains essentially identical enabling language, prompting the conclusion that both it and Education Law § 1950 (14) concern the financing by CSDs of a project, not BOCES' authority to engage in the project. Therefore, under the statute, CSD approval is required only where a CSD has to obtain long-term financing for its share of a BOCES renovation.

■ Next we turn to plaintiffs' cross appeal. They contend that Supreme Court erred in refusing to grant a judgment declaring that voter approval is required before a BOCES may renovate a facility. We disagree. Education Law § 1950 (4) (t) provides that a BOCES has the power: "When authorized by the qualified voters of the board, to purchase or otherwise acquire buildings, sites or additions thereto, to purchase or otherwise acquire real property for any lawful purpose and to construct buildings thereon." In our view, the statute applies to initial purchases of property or the buildings thereon or the initial construction of buildings on newly purchased or already-owned land. This interpretation is supported by Education Law § 1951 (2) (a) which sets forth the procedures for conducting voter referendums under Education Law § 1950 (4) (t). Education Law § 1951 (2) (a) was amended to remove the words "make alterations" from those projects that require submittal to BOCES voters (L 1986, ch 53, § 21).

Furthermore, Education Law § 1950 (14) (c) clearly states that "[n]o further approval of the voters * * * shall be required other than that required by [Education Law § 1950 (4) (t)]". Here, voter approval was already given to acquire the property and building in question in 1984 following a voter referendum; therefore, any renovations undertaken on the building do not require further voter approval.

Finally, with respect to O-C-M BOCES' remaining arguments, they were not raised before Supreme Court on the motion and were therefore not preserved for review on this appeal (see, Schoonmaker v State of New York, 94 AD2d 741). In any event, given our interpretation of the statute, it is unnecessary for us to consider these arguments.

MIKOLL, YESAWICH, JR., LEVINE and HARVEY, JJ., concur.

Order and judgment modified, on the law, without costs, by reversing so much thereof as partially granted plaintiff Board of Education of the East Syracuse-Minoa Central School District's cross motion for partial summary judgment; defendants' motion for summary judgment granted to the extent that it is declared that Education Law § 1950 (14) requires agreement of all component school districts only when one or more of them requires financing for renovations to a Board of Cooperative Educational Services' facility; and, as so modified, affirmed.