ANHEUSER–BUSCH, INC., et al., Plaintiffs,

v.

Stanley MILLER, Trustee, Defendant.

Bankruptcy Appeal No. 89–046–Mc.

United States District Court,
D. Massachusetts.

April 12, 1989.

Daniel J. Carragher, Laura L. Carroll, Widett, Slater & Goldman, P.C., Boston, Mass., for KMS Patriots.

Peter Nils Baylor, Douglas G. Kott, Nutter, McClennen & Fish, Boston, Walter D. Wekstein, Lawrence R. Katz, Gadsby & Hannah, Boston, Mass., for Anheuser–Busch Inc., appellant.

Robert L. Caporale, Daniel C. Cohn, Anne E. Colleton, Fine & Ambrogne, Boston, Mass., for Stanley Miller, Trustee of Stadium Management Corp.

Michael J. Goldberg, Hill & Barlow, Boston, Mass., for Committee of Unsecured Creditors.

## OPINION

McNAUGHT, District Judge.

Anheuser–Busch, Inc., Foxboro Associates and KMS Patriots, L.P. appealed from an order entered by Bankruptcy Judge James N. Gabriel, dated December 9, 1988. The judge had thereby approved the Trustee's motion to sell assets, his motion for rejection of an agreement between the debtor and Anheuser–Busch, Inc., his motion for approval of assumption and assignment of the parking facility lease (retaining claims for past due amounts under the lease), and his motion to assume and assign the "Patriot sublease".

## PART I

Counsel for Anheuser–Busch argued first, and characterized his client's claim as follows: The brewer of Budweiser (and other beers) entered the picture now before the court in September of 1982 when it formed an agreement with the bankrupt Stadium Management. Anheuser–Busch put "three million dollars cash on the barrelhead" and said to Stadium Management basically: "Let us have the walls of Sullivan Stadium for twelve years to hang beer signs on them". Since, said he, Sullivan Stadium is the sole New England playing field for the National Football League, the contract was unusually important to Anheuser–Busch.

Appellant received the right to have messages appear on the electronic scoreboard and to occupy a "Luxury Suite" until May 1994 also. Along with the payment of the three million dollars, Anheuser–Busch undertook to (1) split the cost of sprucing up the signs, (2) provide the advertising copy for the signs and (3) provide Stadium Management Corporation with indemnification in the event of a claim by reason of the character or content of the advertising copy. He stated that at the heart of the appeal of his client was the issue of whether the contract was executory.

The issue of the nature of the agreement is indeed, important. If it is an executory contract (and I conclude that it is) it can be rejected by the Trustee. Title 11 U.S.C. § 365(a). When rejection occurs, there is deemed to be a contract breach giving rise solely to a claim for damages. The Agreement here related to more than the obligations resting on the debtor. Anheuser–Busch had to supply the copy, to contribute toward repainting costs, and to replace damaged copy. Neither of the parties to the Agreement had finished performing. A failure to perform by either would have been a breach. Anheuser–Busch couldn't refuse to supply copy or contribute to needed repainting, and the debtor couldn't decline to make a Suite available or refuse to display the advertising. Having concluded that the contract is conclusory, we arrive eventually at the further conclusion that Judge Gabriel's decision must be affirmed as it relates to Anheuser–Busch.

As argued by the Trustee, even if the Agreement were not "executory" under the definition I have adopted, even if the contract were fully performed by Anheuser–Busch, it (the non-debtor party) would still be relegated to the remedy of filing a claim. *In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir.1987).

■ There appears to be no good reason why Anheuser–Busch should be "made whole" to the detriment of other general unsecured creditors. That would hardly be equitable. Neither can I accept the argument that the Agreement was a lease or an easement. At the most, Anheuser–Busch enjoyed a license in two respects. That portion of the Agreement pertaining to the Luxury Suite specifically referred to a "license". The contract, moreover, provided for the use of the Suite by Anheuser–Busch only on certain days. It did not grant exclusive possessory rights during its term. *See, Peat Marwick Main & Co. v. New York City Department of Finance*, 139 Misc.2d 1093, 530 N.Y.S.2d 744 (1988). This was no more a lease than would be a season ticket to the Patriots' games.

■ As for the space devoted to advertising, that was also the subject of a license rather than a lease. Those messages presented to the public on the electronic scoreboard were displayed for matters of minutes. There was no grant thereby of the exclusive possession of realty which characterizes a lease as defined traditionally. The brewer here supplied copy. The debtor controlled the real estate itself and kept to itself access to the places where the advertising was placed. Finally, as the appellee's brief points out (at p. 17), at the time of the execution of the Agreement, time-share interests weren't recognized under Massachusetts law. This is, again, no more a time-share interest than would be a ticket to the games this fall. The bankruptcy judge properly approved rejection of the Agreement.

## PART II

Foxboro Associates also took an appeal from the Order of the Bankruptcy Judge which empowered the Trustee to assume and assign the parking facility lease, and the debtor's claims against Foxboro Associates. We review the decision de novo.

■ We are called upon to decide whether the Trustee could retain the right to seek amounts claimed to be due from Foxboro Associates, whether the integrity of the bidding process was violated when K Corp., the successful bidder, was allowed to modify the terms of its final sealed bid, and whether Foxboro Associates was deprived wrongfully of any right of setoff.

Nothing in the Code bars the Trustee from retaining claims for amounts past due. K Corp. in submitting its final sealed bid dropped the debtor's claims against Foxboro as an asset to be purchased, and the Bankruptcy Court determined that this was the highest and best offer.

The argument by Foxboro Associates centers about the right of the Trustee to assign the Parking Lease free of an alleged 1984 amendment to it. The Trustee, however, assumed and assigned the entire lease, and Foxboro Associates continues to receive the benefit of its bargain under that lease. Retention of the claims for past due amounts is not a violation of Sec-

tion 365 of the Code, as claimed by Foxboro Associates. One may assign a contract without assigning claims for breaches in the past. 3 *Williston, Contracts*, § 430 (3d ed. 1960).

Any duty on the part of Foxboro Associates to pay amounts due has nothing to do with performance to be rendered under the lease.

■ Secondly, I rule that there was no violation of the integrity of the bidding process. The final sealed bid listed the assets to be purchased, and it did not include the claims against Foxboro Associates. That subparagraph had been deleted.

■ Finally, I find no right of setoff under the Code on the part of Foxboro Associates. There is no valid claim presently in existence and the Bankruptcy Court was not under a duty to protect some speculative right in the future.

The order of the Bankruptcy Court as related to Foxboro Associates is affirmed.

## PART III

Appeal was taken also by KMS Patriots, L.P. Since it was taken from a core proceeding, 28 U.S.C. § 157(b), we may set aside only clearly erroneous fact findings, and must apply a de novo standard of review to questions of law. KMS Patriots, L.P. is a limited partnership (Delaware) appealing from the approval of the Second Amended Motion to Sell, the Motion for Approval, Assumption and Assignment of the Patriot Sublease, and the Office Sublease Motion. The parties provided for a stipulated record.

■ It is claimed by KMS Patriots, L.P. that the Bankruptcy Court erred in approving the assumption and assignment of the Sublease, and in finding that there were no defaults by the debtor or Trustee. This latter contention is subject to disposition by reason of the fact that at no time did the sublease tenant give any notice of default to the debtor, a prerequisite to a default. Article XIX, subp. (a) specifically refers to a notice specifying a failure of performance on an obligation. None was given, hence the Court's finding that there was no default was correct.

By way of subsidiary argument, appellants urge that this Court find "the evidence showed that repairs and maintenance of the leased premises were the responsibility of the Debtor and had not been completed". The Trustee conceded, apparently, that there were repairs at Sullivan Stadium in need of completion. Article VIII of the Sublease provided that the landlord had some responsibilities for repairs and maintenance, and that others were the responsibility of the tenant during football season. Article XIX provided there would be no default, as noted above, without notice to the landlord in a specific form, and a failure to perform within a reasonable time thereafter. Appellants concede in their brief that there was no evidence of any notice of default. The Trustee testified, furthermore, that "extraordinary" repairs, in the nature of capital expenditures were the type which were not done.

I conclude that the finding of the Bankruptcy Judge to the effect that there was no default by reason of unperformed repairs, was correct, and arrive at the same conclusion.

■ Next, it was contended by KMS Patriots, L.P. that the debtor had failed to give appropriate rent credits on account of concession income. The sublease provided, Article V, that the tenant receive as a rent credit a percentage of rental income received by reason of a lease with a concessionaire. Apparently there was such a lease before 1985, but none while the Trustee was involved; hence, KMS Patriots, L.P. cannot claim a concession rent credit. Patriots Corporation had not claimed such a credit after 1984, so, if there were such a right, it was waived. KMS Patriots, L.P. is its successor and is bound by the waiver.

■ It is claimed by KMS Patriots, L.P. that revenue from luxury boxes belonged to the tenant, whereas the Bankruptcy Court found that such revenue belonged to the debtor. The luxury boxes were not a part of the demised premises. The boxes were nonexistent when the sublease was

executed, and once they were built, the revenues from them went to the debtor at all times. There was no error on the part of the Bankruptcy Court in ruling that those revenues were retained by the landlord.

Next, KMS Patriots, L.P. claims that the Bankruptcy Court erred in finding that the Trustee provided assurance of future performance by K Corp., when the Trustee did not propose to transfer the interest in the land completely surrounding Sullivan Stadium. The stadium is surrounded by land owned by Commonwealth Sports Properties, Inc., except where it borders on the State highway. This came to be known as the "Lip Parcel". The only direct access to the parking facilities is across this parcel, and part of the Stadium encroaches on it.

The sublease here does not prohibit or restrict assignment of the landlord's interest. Where there is no prohibition of assignment in a lease, it is assignable under Massachusetts law. *Valley Oil Co. v. Barberian*, 344 Mass. 759, 183 N.E.2d 109 (1962). "Leases may be assigned or sublet in the absence of provisions in the lease that this cannot be done." Rescript, p. 110. There is, then, no requirement of assurance of future performance. The appellant offers its own definition of "adequate assurance": that the holder of the tenant's interest must not be subjected to the risk of being constructively evicted from the premises, or the risk that access to the parking facilities will be cut off. It seems to me that the short answer is that (1) reasonable assurance may be given only with respect to those matters within the control of the landlord, (2) access would still be available from Route 1 and (3) the Town Counsel of Foxborough notified the Bankruptcy Court that, if public safety problems arose, the power of eminent domain would be exercised.

The trustee cannot assure common control of the stadium and the Lip Parcel and cannot be required to give anything more than "reasonable" assurance of performance by K Corp. The debtor's interest in the Parking Facility Lease with Bay State

Harness Horse Racing and Breeding Association (which allows access over the Lip Parcel to persons who park on their property when stadium events take place) will be acquired under the offer. Reasonable assurance of future performance appears to have been provided.

It follows that the decision of the Bankruptcy Court approving the assumption and assignment of the sublease and the second amended motion to sell the assets free and clear of interests should be and is hereby affirmed.

For the foregoing reasons, I conclude: KMS Patriots, L.P. has standing to bring the appeal; nonetheless, the Bankruptcy Court had and properly exercised jurisdiction.

The Kiam Group, Victor K. Kiam II, Francis W. Murray and William H. Sullivan, Jr., also filed notices of appeal with respect to the order of the Bankruptcy Court. This group stands in the position simply of a frustrated bidder, without right to challenge the Bankruptcy Court's determination here. The members cannot assert claims on behalf of KMS Patriots, L.P., which they control. *See In re Dein Host, Inc.*, 835 F.2d 402 (1st Cir.1987). They are not, I conclude, aggrieved persons, and lack standing. In the event, however, that standing exists, for the reasons stated above, and for the further reason that the Bankruptcy Judge gave proper consideration to the question of future parking revenues, the actions of the Bankruptcy Court are affirmed.