■ In the Matter of PEAT MARWICK MAIN & Co., Formerly Known as PEAT MARWICK MITCHELL & Co. Respondent, v NEW YORK CITY DEPARTMENT OF FINANCE et al., Appellants.—Order and judgment (one paper) of the Supreme Court, New York County (Edward H. Lehner, J.), entered August 4, 1988, which granted petitioner's application in this CPLR article 78 proceeding to annul respondent Commissioner's determination of a commercial rent/occupancy tax deficiency, annulled the determination and awarded petitioner a refund of $158,317.54 plus $500 costs deposited, unanimously reversed, on the law, and the determination reinstated, without costs.

Commencing in 1974 through 1985, petitioner Peat Marwick Main & Co., the well-known "Big Eight" accounting firm,

entered into a series of three-year agreements with Madison Square Garden Center, Inc. for the exclusive occupancy of the "lounge" or "sky" box No. 23, useable during all regularly scheduled entertainment events at the Garden during the agreement term. Finding the consideration paid by petitioner to the Garden for such occupancy to be "commercial rent" within the meaning of chapter 7 of the Administrative Code of the City of New York, respondent Commissioner, after a hearing, assessed petitioner the sum of $158,317.54 representing deficiencies in unpaid principal and interest of commercial rent tax (CRT) based on annual rentals that in the period 1980 through 1986, for example, began at $52,000 and increased to $67,500.

In this article 78 proceeding the IAS court annulled this determination by respondent primarily on the ground that these annual payments constituted an "admission charge" for the 10-seat capacity of the box and held that these payments were not subject to CRT. We reach the opposite conclusion and reverse.

We find that in both form and substance these agreements have all the attributes of a commercial lease, or at the very least, a license agreement which is also subject to CRT under applicable provisions of the Administrative Code *(Matter of Debenhams, Inc. v Commissioner of Fin. of N. Y. City,* 92 AD2d 829). In addition to denominating the parties as "Lessor" and "Lessee", the agreement required lessor to furnish lessee with carpeting, chairs, a sofa, a coffee table, a water-supplied sink, a refrigerator, telephone installation and private bathroom facilities. Lessor also supplied utilities (except gas) for this box, and was responsible for repair, maintenance and cleaning services. Petitioner was required under the agreements to provide, at its own cost, insurance coverage including public liability in the minimum amount of $1 million and property damage insurance for a minimum of $500,000. Petitioner's access to the box was provided by private key.

The lease entitled petitioner to membership in the Hall of Fame Club, and it could not assign its interest under the agreements without the lessor's prior written consent.

The lease for the period September 1, 1980 through August 31, 1983 was explicit with regard to petitioner's responsibility for payment of the tax. It provided as follows: *"Lessee shall also be responsible for, file and pay to the appropriate taxing authority the Commercial Rent or Occupancy Tax due on the*

*Box* which is estimated (at current rates) at Three Thousand Nine Hundred Thirty Seven ($3,937) Dollars for the first year of the Term; and Four Thousand One Hundred Twenty Five ($4,125) Dollars for each of the second and third years of the Term. *Should it be determined that there is no Commercial Rent or Occupancy Tax due on the Box, Lessee agrees to pay such sum directly to Lessor as additional rent for each year during the Term."* (Emphasis added.)

Clearly, the parties to these agreements contemplated a landlord-tenant relationship, and assigned the very tax liability at issue here as the responsibility of petitioner, which is now bound by the leasehold transactional form it has freely elected to employ *(Commissioner v National Alfalfa Dehydrating,* 417 US 134, 148-149; *Matter of Sverdlow v Bates,* 283 App Div 487, 491). We are also satisfied that the lounge box facility was used for the entertainment and relaxation of plaintiff's clients and favored employees, which is sufficient to bring such use within the broad definition of section 11-701 (5) of the Administrative Code, which defines "taxable premises" as those "used for the purpose of carrying on or exercising any * * * commercial activity". Significantly, petitioner deducted these rental payments as business expenses in its annual Federal tax returns, a strong indication of use of the box for "commercial activity."

Finally, petitioner would invoke the three-year Statute of Limitations contained in Administrative Code § 11-717 (b) as a partial defense to its liability. We hold that this limitation is not available to petitioner because it never furnished respondent with information sufficient to put the taxing authority on notice of petitioner's occupancy of the box, and as to this obligation it was as if plaintiff had failed to file any tax return at all *(Matter of Chasanoff Operating Co. v State Tax Commn.,* 79 AD2d 780, *lv denied* 53 NY2d 601). Thus the three-year limitation period never commenced to run. The fact that petitioner filed annual commercial rent tax returns applicable to the leasing of its principal New York City office is of no avail to petitioner; its default in reporting herein constituted a 100% omission of the data pertinent to this specific tax liability.

For these reasons we reverse the judgment appealed from and sustain the assessment. Concur—Carro, J. P., Milonas, Rosenberger, Ellerin and Wallach, JJ. *[See,* 139 Misc 2d 1093.]