TRUMP-EQUITABLE FIFTH AVENUE COMPANY, Respondent-Appellant, v CITY OF NEW YORK et al., Appellants-Respondents.

First Department, July 26, 1990

8

## APPEARANCES OF COUNSEL

*Kevin L. Smith* of counsel *(Leonard Boxer, Janis Ettinger* and *Mitchell C. Shapiro* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for respondent-appellant.

*Edith I. Spivack* of counsel *(Regina Feder* with her on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for the appellants-respondents.

## OPINION OF THE COURT

ASCH, J.

Petitioner Trump-Equitable Fifth Avenue Company is a joint venture, initially owning a parcel of property located on Fifth Avenue commonly referred to as Trump Tower. This 59-story structure is a mixed-use condominium consisting of 18 floors of retail and commercial space and 38 residential floors housing 266 luxury units. The City's Department of Housing Preservation and Development (HPD) calculated that 64.6% of the building's aggregate areas is residential and the rest commercial.

In July 1980, when construction of the project began, municipal respondents (the City) twice denied petitioner's application for partial exemption from local real property taxes under Real Property Tax Law § 421-a. Pursuant to this statute, during construction and the first two years afterward, the property owner receives a full benefit of exemption. Thereafter, it is phased out in increments of 20% every two years. Petitioner successfully challenged the City's denial of such benefits *(Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, *after remand* 62 NY2d 539).

During the construction, petitioner sold individual residential condominium units at Trump Tower, which had been designated as a single lot on the City's tax map. From the 1984-85 fiscal year, it was redesignated as numerous lots to reflect the new condominium status. Petitioner retained sole ownership of the commercial portion, which was designated as a single lot (lot 1001). Trump Tower was completed in June 1984.

During the pendency of the court challenges to the City's denial of section 421-a tax benefits, petitioner paid the City's tax assessments under protest. After the Court of Appeals ruled petitioner was entitled to receive section 421-a tax benefits, the City gave petitioner a refund check in March 1986 and then issued a set of remission letters in April 1986 concerning the payment of certain refunds for the overpayment of tax assessments for the 1981-82 through 1983-84 tax years. The refund, however, was based on an application of section 421-a tax exemption benefits to that portion of Trump Tower which consisted of residential units calculated to be 64.6% of the building's aggregate floor area. Petitioner maintains the correct amount of residential units is 66.31% of aggregate floor area.

In 1986, petitioner commenced a proceeding challenging the City's refund on the grounds that the City (1) failed to provide petitioner with a section 421-a tax exemption to the commercial unit of up to 12% of that area; (2) miscalculated the floor space as to the differential between the residential and commercial spaces; (3) incorrectly applied the entire tax-exempt percentage to the residential units after it unlawfully segregated the building into its commercial and residential parts; and (4) failed to pay interest on refunds pursuant to CPLR article 50.

In February 1988, the Court of Appeals, in *Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y.* (71 NY2d 340), determined that the City was required to assess the taxable valuation of a mixed-use condominium building by applying the tax exemption of RPTL 421-a on a building-wide basis, including its nonresidential units, regardless of whether such space was "incidental" to the residential units. Thereafter, the City issued another set of remission letters, in July 1988, to petitioner.

According to petitioner, these 1988 remission letters (1) miscalculated the ratio of residential/commercial floor space

at Trump Tower as being 64.6% to 35.44%, respectively, instead of 66.31% to 33.69%, in calculating tax refunds and remissions for tax years 1981-82 through 1988-89; (2) improperly allocated the entire nonexempt portion of the Trump Tower assessed valuation to the commercial unit alone, rather than applying one tax-exempt percentage to each of the building tax lots, as purportedly required by section 421-a; (3) miscalculated a statutory 20% reduction in the amount of the tax exemption for the third and fourth tax years (1987-88 and 1988-89) by using an erroneous base figure; and (4) improperly reduced the amount of the tax exemption on the commercial unit by adding the portion of the alternative minitax assessment, instead of using it as an alternative, to the tax on the lot as a whole. Additionally, petitioner sought interest on all refunds going back to 1981.

The IAS court, relying primarily on *Alamo (supra)*, decided all of the issues in favor of petitioner except on the issue of the measurement of floor space. The court determined that the City's calculation of section 421-a tax benefits to Trump Tower as a whole was incorrect, as only one exempt percentage for all of the tax lots had to be calculated and applied equally to the residential and commercial units of Trump Tower. The court further determined that the correct method of tax assessment to the individual residential unit owners was an assessment to each condominium unit based on RPTL 421-a. The court also declared that all of the residential/ commercial unit owners were to pay the taxes on a proportionate basis. The court, however, deferred to the City's Department of Housing Preservation and Development's computation of the percentages of floor space allocated to the residential and commercial portions of Trump Tower, which were based on regulations which measured the aggregate floor area from the interior faces of the exterior walls, and not the exterior of the exterior walls, as urged by petitioner. Finally, the court rejected the City's argument that there was no authority for the payment of interest in a CPLR article 78 proceeding, but limited such interest to further refunds pursuant to CPLR 5003 from the time of judgment. The court also rejected the City's other arguments that the action should be dismissed because the owners of the residential condominium units were not joined as necessary parties, or because petitioner was time barred from seeking relief as to the tax years 1981-82 through 1984-85 due to the City's payment of tax refunds in 1985.

■ The City's calculation as to the ratio of commercial and residential space at Trump Tower was improper, and the IAS court's acceptance of it was erroneous. The HPD's architect's findings allocated the ratio as being 64.6% residential to 35.4% commercial. This computation was based on HPD's measurement of the premises from the interior faces of the exterior walls, as required by HPD's "Rules and Regulations Governing Tax Exemption pursuant to 421-a of the Real Property Law". Section 1.3 (5) of the rules defines "aggregate floor area" as "the sum of the gross horizontal areas of a dwelling or dwellings and accessory structures on a lot measured from the interior faces of exterior walls".

While the City asserts that nothing in the record questions the accuracy of its calculations, the accuracy of the calculations is not the issue here but, rather, the *method* of calculation. Moreover, the City fails to address the glaring contrast between HPD's rules and regulations governing the computation of the floor area ratio in dispute and the section 421-a statute itself. Section 421-a (1) (b) defined "floor area" as "[t]he horizontal areas of the several floors or any portion thereof of a dwelling or dwellings and accessory structures on a lot measured from the exterior faces of exterior walls or from the center line of party walls". While "aggregate floor area" is not separately defined in the statute, the wording contained in the statutory definition of "floor area" appears to encompass its usage through its plural reference to "floor". Since " 'the words of the statute are clear and the question simply involves the proper application of the provision "there is little basis to rely on any special competence or expertise of the administrative agency and its interpretative regulations", especially when the interpretation, as embodied in a regulation, directly contravenes the plain words of the statute *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459)'." *(Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 62 NY2d 539, 545, *supra.)* Thus, the matter must be remanded for recomputation of the floor area calculations pursuant to the language of the statute, as the certainty of petitioner's own calculations cannot be independently ascertained. In the event the City concedes that petitioner's calculations as measured from the "exterior walls" are correct, then those figures should be adopted.

The City contends that the July 1988 remission letters properly distributed the 12% exemption for commercial space allowed by RPTL 421-a among all units in the building and

properly charged the remaining liability for excess nonexempt commercial space to the commercial unit alone.

In 1981, the Legislature amended RPTL 421-a to provide that in any multiple dwelling entitled to a tax exemption: "[I]f the aggregate floor area of commercial, community facility and accessory use space exceeds twelve per cent of the aggregate floor area * * * tax exemption shall be reduced by an amount equal to the per cent of the aggregate floor area by which the aggregate floor area of commercial, community facility and accessory use space exceeds twelve per cent of the aggregate floor area of the multiple dwelling" (L 1981, ch 995, amending Tax Law § 421-a [2] [d]).

■ Thus, the commercial portion of such a mixed-use multiple dwelling is entitled to the exemption based upon the ratio of aggregate floor area devoted to each use, to establish the maximum commercial use which may be incorporated in the building. Where the Commercial use exceeds the 12% of the aggregate floor area allowed, the exemption is not lost but only diminished *pro tanto* by the area exceeding 12%.

In the case at bar, the City, upon deducting the assessor's value of the 12% exempt commercial space, decided to wholly impose the taxes on the remaining nonexempt commercial portion of the aggregate floor area solely to the commercial unit, without additionally apportioning the amount owed to each residential condominium unit. The IAS court correctly concluded, however, that such application ran afoul of section 421-a and the Court of Appeals decision in *Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y. (supra).*

The over-all scheme of section 421-a provides for the granting and calculating of tax-exempt percentages for the buildings themselves, and not for the individual units of which they are composed. In *Alamo,* the Court of Appeals rejected the City's interpretation that section 421-a tax benefits must be applied on a unit-by-unit basis, excluding commercial condominiums. Upon an examination of the legislative history of section 421-a and the literal meaning of the words of the statute, Judge Simons concluded that the Legislature intended all properties, regardless of the type of ownership, to receive the benefit of the exemption and that "the exemption is to be applied to the building as a whole, to the extent permitted, and not to parts of it" *(supra,* at 345). Moreover, the court went on to state that: "In the case of condominium units that means that the mini tax assessment must be applied *to the*

entire building and the assessment then apportioned on a unit-by-unit basis as required by Real Property Law § 339-y. The failure to do so effectively excises from the statute buildings held in condominium ownership and applies the exemption differently depending on the type of ownership" *(supra,* at 345).

In view of this language employed in *Alamo (supra),* the City is required herein to apply one exempt percentage among all tax lots, residential and commercial, comprising Trump Tower, and the percentage must be applied equally to all such units.

Additionally, the IAS court correctly determined that the City erroneously calculated the taxable assessment when it reduced the amount of the tax exemption under section 421-a by the commercial lot's pro rata share of the minitax assessment. The minitax is a form of alternative tax which is calculated not on the assessed value of the new development, but by applying the current tax rate to the assessed value of the property in the year before the construction was begun. The effect of the City's calculations led to the requirement that the commercial tax lot owner of Trump Tower pay the tax on the entire nonexempt portion of the building's assessed valuation, *plus* its pro rata share of the minitax assessment, while the residential lot owners enjoyed a 100% tax exemption and only paid tax on their pro rata share of the minitax assessment. In accordance with the principle that the taxes allocated to section 421-a projects be applied proportionately, the City's calculation of minimum tax assessment, therefore, was improper *(see, Matter of Alamo Assocs. v Commissioner of Fin. of City of N. Y.,* 71 NY2d 340, *supra).*

Petitioner contends that it is entitled to both postjudgment and prejudgment interest on its refunds. The City contends only that the postjudgment interest was erroneously granted.

In *Matter of Brodsky v Murphy* (25 NY2d 518), cited by both parties, the Court of Appeals held that a taxpayer, entitled to a refund of taxes improperly paid and collected by the State, is not entitled to interest on the refund from the time of payment of taxes unless the statute authorizes the refund or the taxes were collected under a void statute. In *Brodsky,* the mortgage tax was collected under a valid tax statute erroneously interpreted, which was silent on the issue of interest on a tax refund. Consequently, the court held that the taxpayer was not entitled to interest from the time of payment, but *only* from the time of judgment pursuant to CPLR 5003.

■ Unlike the petitioner in *Brodsky (supra),* the right to payment of interest on real property tax refunds is governed here statutorily by RPTL 726 (2). As the City notes, by Laws of 1982 (ch 681), effective July 1, 1983, General Municipal Law § 3-a established the rate of interest on such refunds to be 9%. Likewise, pursuant to Laws of 1981 (ch 258), the rate of interest on judgments governed by CPLR 5004 has been 9% since June 25, 1981. Thus, the rate of interest is of little consequence to this appeal, although we modify to provide that the interest be determined in accordance with the General Municipal Law. While the City agrees that RPTL 726 provides for interest on the tax refund from the date the taxes were paid to the date of the order or judgment, it urges that petitioner is not entitled to payment of any postjudgment interest unless it has applied for an audit and payment of such refund. However, the service on City officials of a final order directing payment of tax refunds constitutes a sufficient demand to start the running of interest *(People ex rel. Ottley Estate Corp. v Lilly,* 302 NY 278).

■ Finally, there is no merit to the City's claim that the instant petition is time barred by virtue of its payment of 1985 refunds to petitioner, as the 1988 remission letters related to the tax years 1981-82 through 1987-88. Thus, any refund received in 1985 could not be considered a "final determination" for purposes of commencing the Statute of Limitations under CPLR 217.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Harold Tompkins, J.), entered September 7, 1989, which, *inter alia,* held that the City incorrectly allocated RPTL 421-a tax benefits between the residential and commercial units in Trump Tower; upheld the City's computation of residential and commercial, community facility and accessory use percentages of the building's aggregate floor area at 64.6% and 35.4%, respectively; and declared interest on additional tax refunds payable pursuant to CPLR 5003 only "from and after entry of judgment", should be modified, on the law, to the extent of striking the City's computation concerning the floor ratio between the residential and commercial condominium units of Trump Tower, recalculating the proportionate tax benefits and tax liabilities among the units, declaring petitioner entitled to interest on additional refunds computed from the date of payment and modifying the last decretal paragraph to direct the payment of interest on said additional refunds pursuant to General Mu-

nicipal Law § 3-a, and otherwise affirmed, without costs or disbursements.

MURPHY, P. J., SULLIVAN, MILONAS and ROSENBERGER, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on September 7, 1989, unanimously modified, on the law, to the extent of striking the City's computation concerning the floor ratio between the residential and commercial condominium units of Trump Tower, recalculating the proportionate tax benefits and tax liabilities among the units, declaring petitioner entitled to interest on additional refunds computed from the date of payment and modifying the last decretal paragraph to direct the payment of interest on said additional refunds pursuant to General Municipal Law § 3-a, and otherwise affirmed, without costs and without disbursements.